EDWARD A. DUFRESNE, JR., Chief Judge.
 

 |2The Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, Orlando Lane, with one count of possession of a firearm while in possession of marijuana in violation of LSA-R.S. 14:95(E) and one count of second offense possession of marijuana in violation of LSA-R.S. 40:966(C). He pled not guilty and proceeded to trial on count one only on August 19, 2008.
 
 [1]
 
 After considering the evidence presented, a twelve person jury found defendant guilty as charged. The trial court sentenced defendant to six years at hard labor without the benefit of parole, probation, or suspension of sentence.
 

 The State subsequently filed a multiple offender bill of information alleging defendant to be a second felony offender based on a prior conviction for possession of cocaine. Defendant admitted his status as a second felony offender and was resen-tenced as a multiple offender to ten years at hard labor without the benefit of parole, probation, or suspension of sentence. Defendant now appeals.
 

 LFACTS
 

 At approximately 10:00 p.m. on October 13, 2006, Captain William Goebel, with the Jefferson Parish Constable’s Office, was in the parking lot of the Winn Dixie at Medical Center Boulevard and the Westbank Expressway when he heard a dispatch from the Jefferson Parish Sheriffs Office regarding suspicious vehicles in that parking lot. Captain Goebel, who was in his personal vehicle, had just gotten off-duty and was still in uniform. Captain Goebel saw the described vehicles and then advised Jefferson Parish Headquarters that he was in the parking lot, that he would watch the vehicles, and that he would advise of their direction if they left.
 

 At trial, Captain Goebel testified that he observed three vehicles: a maroon Tahoe, a pickup truck and a car. According to Goebel, the Tahoe and pickup truck were parked passenger side to passenger side facing opposite directions; and it appeared that the occupants of the vehicles were handing something back and forth across
 
 *923
 
 the windows, but he could not identify what it was.
 

 At that time Deputy Paul Sperandeo, with the Jefferson Parish Sheriffs Office, turned into the parking lot in response to the call. He observed a maroon SUV, which he was looking for, attempting to leave the parking lot. He pulled his unit directly in front of the SUV, turned on his headlights, overhead lights, and side spotlight, and initiated a stop. Captain Goebel testified he thought the SUV might try to ram the police unit so he ran up to driver’s window with his gun drawn and ordered the driver to stop. Meanwhile, Deputy Sperandeo exited his vehicle and approached the passenger side of the maroon SUV. Both passenger side windows were down and Deputy Sperandeo detected an odor of burnt marijuana coming from the vehicle. He shined his flashlight into the car and saw the rear seat passenger, identified as defendant, remove a handgun from his waist and pass a |4clear baggie containing green vegetable matter, which Deputy Sperandeo believed to be marijuana, to another passenger.
 

 Additional units arrived at the scene and the occupants were removed from the vehicle and placed into custody. Deputy Sperandeo searched the vehicle and found two guns and a baggie containing green vegetable matter that field tested positive for marijuana.
 

 At trial, defendant presented the testimony of Christopher Jones, his co-defendant.
 
 [2]
 
 Jones testified that he had the firearm and marijuana on his person when the police stopped the vehicle in which he was a backseat passenger. He stated he did not see defendant in possession of a firearm or marijuana on the night of the incident. According to Jones, there were several vehicles parked next to him in the parking lot. He claimed that they were on their way to a party and stopped in the parking lot to get directions.
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 On appeal, defendant challenges the trial court’s denial of his motion to suppress evidence. He specifically contends that there was no reasonable suspicion to justify the investigatory stop of the vehicle in which he was a passenger, and therefore, the evidence was illegally seized and should be suppressed.
 

 In a hearing on a motion to suppress evidence seized without a warrant, the State bears the burden of proving that an exception to the warrant requirement applies. LSA-C.Cr.P. art. 703(D). In
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement. Under LSA-C.Cr.P. art. 215.1(A), a law enforcement officer may stop and question a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a | f,criminal offense.
 
 State v. Sam,
 
 08-220 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769,
 
 writ denied,
 
 08-1984 (La.5/15/09), 8 So.3d 577.
 

 Investigatory stops require reasonable suspicion of criminal activity.
 
 State v. Boss,
 
 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringe
 
 *924
 
 ment of the individual’s right to be free from government interference.
 
 State v. Chauvin,
 
 06-362 (La.App. 5 Cir. 10/31/06), 945 So.2d 752, 757-58. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible.
 
 State v. Boss,
 
 887 So.2d at 585.
 

 The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action.
 
 State v. Katie,
 
 96-2650 (La.9/19/97), 699 So.2d 879, 880. In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. A reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. An officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop.
 
 State v. Sam,
 
 988 So.2d at 769.
 

 Under certain circumstances, an anonymous tip can provide reasonable suspicion to detain and question a person. Generally, there must be some corroboration of the anonymous tip and the tip must contain predictive information | ^regarding the future behavior of the reported suspect.
 
 Alabama v. White,
 
 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990);
 
 State v. Robertson,
 
 97-2960 (La.10/20/98), 721 So.2d 1268, 1270.
 

 Whether an anonymous tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. The sufficiency of an anonymous tip under
 
 Terry
 
 is determined by the reliability of its assertion of illegality and not just its tendency to identify a determinate person.
 
 State v. Boss,
 
 887 So.2d at 586. “If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.”
 
 Alabama v. White,
 
 496 U.S. at 330, 110 S.Ct. at 2416.
 

 The anonymous caller’s ability to predict the suspect’s future behavior goes towards reliability, as it demonstrates inside information and a special familiarity with the suspect’s affairs.
 
 State v. Boss,
 
 887 So.2d at 586. Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect.
 
 State v. Triche,
 
 03-149 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 85.
 

 In the present case, Deputy Sperandeo was the sole witness to testify at the suppression hearing. He testified that he arrested defendant after responding to a “suspicious person” call at the Winn Dixie. He explained, “[t]he anonymous caller advised that there was possible drug activity going on at that location.” He stated that as he pulled into the parking lot, he observed a maroon vehicle, which he believed was described by the anonymous complainant, attempting to leave the parking lot. Deputy Sperandeo testified he immediately pulled in front of the vehicle, activated all his lights, exited his vehicle, and approached the passenger |7side of the maroon vehicle at which time he detected the smell of burnt marijuana coming from the
 
 *925
 
 vehicle. At that time Deputy Sperandeo observed defendant, in the rear passenger seat, removing a silver and black handgun and dropping it to the floorboard as well as passing a clear baggie containing a green substance to the other passenger in the back seat. Officer Sperandeo testified that he immediately drew his weapon, ordered them to get their hands up, and requested additional units. After that, he recovered the weapon and the bag containing the green substance that tested positive for marijuana.
 

 On cross-examination, Deputy Sperandeo stated the sole reason that he blocked the maroon vehicle was the anonymous call. He admitted he did not speak with the caller, had no information regarding past information provided by the caller, and did nothing to verify the anonymous tip. He stated that he stopped the vehicle in an attempt to verify the information given by the anonymous caller. At trial, Deputy Sperandeo did not testify about the anonymous tip and no additional evidence was offered regarding the tip.
 
 [3]
 
 Deputy Sperandeo simply stated at trial that he responded to a call at a strip mall and was looking for a maroon SUV.
 

 With no predictive tip, no corroboration of the tip given, and no observation of suspicious activity, we find that Deputy Sperandeo lacked reasonable suspicion to conduct an investigatory stop of the vehicle in which defendant was riding. A review of the jurisprudence supports this conclusion.
 

 In
 
 State v. Robertson,
 
 721 So.2d at 1270-1271, the Louisiana Supreme Court found the officers lacked reasonable suspicion to stop the defendant. The officers received an anonymous tip that the defendant, who was named and described, was selling drugs. The tip also described the vehicle that the defendant drove and |sstated where the vehicle would be parked when the defendant was not using it to sell drugs. The officers went to the location and saw the vehicle being driven away. They followed the vehicle and when the defendant stopped, the officers detained him and called for a canine unit. The supreme court found that, although the officers corroborated certain aspects of the tip, such as the defendant’s name, physical description, and the location of the vehicle, the tip contained no predictive information, and therefore, there was no reasonable suspicion to stop defendant.
 

 Likewise, in
 
 State v. Wilson,
 
 99-2834 (La.App. 4 Cir. 3/15/00), 758 So.2d 356, the Fourth Circuit held the police lacked reasonable suspicion to conduct an investigatory stop and reversed the trial court’s denial of the defendant’s motion to suppress. The officers testified they received a call from dispatch that an anonymous caller reported a suspicious person at a specific location. The dispatcher gave a description of the suspect and the clothes he was wearing and noted the suspect was “possibly” selling drugs. The officers observed the defendant, who fit the description broadcast by the dispatcher, at the given location. The defendant entered a nearby store and the officers followed him and asked him to step outside. The officers conducted a pat down search and discovered cocaine on defendant’s person. The Fourth Circuit found the information received by the police from an anonymous caller did not provide the reasonable suspicion required for an investigatory stop. The court noted there was no information
 
 *926
 
 elicited during the suppression hearing or trial regarding the anonymous caller’s veracity, reliability, or basis of knowledge. The court further noted there was no testimony that the officers saw the defendant engage in suspicious activity when they arrived at the scene, and thus, there was no independent corroboration that defendant was engaged in criminal activity. The court also noted that there was no evidence that the area was a high crime area or | nan area known for drug trafficking. The court commented that aside from a description of the clothing worn by the defendant, the only evidence of suspicious activity was the anonymous tip that the suspect was “possibly” selling drugs at a specific location. As such, the Fourth Circuit found there was no reasonable suspicion to detain the defendant.
 
 State v. Wilson,
 
 758 So.2d at 361.
 

 See also, State v. Herrington,
 
 07-70 (La.App. 4 Cir. 6/20/07), 961 So.2d 1271,
 
 writ denied,
 
 07-1528 (La.8/81/07), 962 So.2d 429, and
 
 State v. Lee,
 
 485 So.2d 555 (La.App. 5 Cir.1986), where the appellate courts concluded that the police officers did not have reasonable suspicion to stop the defendants, and therefore, the trial court erred in denying the defendants’ motions to suppress evidence.
 

 Based on the facts and circumstances of this case, we find that the State failed to meet its burden of showing that the stop of defendant was justified. Deputy Speran-deo simply testified he responded to a call of a suspicious person at the strip mall and that the anonymous caller advised of possible drug activity. He went to the identified location, looking for a maroon SUV. As he approached the parking lot, he saw a maroon SUV leaving. He immediately blocked it in and initiated a stop by activating all his lights.
 

 There was no information either during the suppression hearing or at trial regarding the anonymous caller’s veracity, reliability, or basis of knowledge. Deputy Sperandeo admitted he never spoke with the caller and had no information about the anonymous caller. Additionally, the anonymous tip contained no predictive information. Finally, there was no independent corroboration that defendant was engaged in criminal activity. Deputy Sperandeo admitted he did nothing to verify the anonymous tip, which contained only scant information, and stopped the vehicle in an attempt to verify the information. He stated the sole | inreason he stopped the vehicle was based on the anonymous call. Deputy Sperandeo never testified that he saw defendant engaged in any suspicious activity. Aside from the vehicle matching the description given by the dispatcher, the only evidence of suspicious activity was the anonymous tip that the vehicle was “possibly” selling drugs in the parking lot. Deputy Sperandeo never testified the area was a high crime area or an area noted for drug trafficking. Further, Deputy Sperandeo did not observe any suspicious behavior on the part of defendant that would appear to have been drug related.
 

 The State argues Captain Goebel, the off-duty constable who was in his personal vehicle in the Winn Dixie parking lot at the time of the call, corroborated the anonymous caller’s tip with his testimony that he witnessed an exchange between the vehicles. The State presented the testimony of Captain Goebel at trial, but not at the suppression hearing. Captain Goebel testified he heard the dispatch for a suspicious vehicle in the Winn Dixie parking lot and that the dispatcher gave a description of the vehicles, one of which was a maroon Tahoe. Captain Goebel stated the maroon Tahoe was parked passenger side to passenger side with the pickup truck. He
 
 *927
 
 testified it appeared the occupants were “handing something back and forth across between the windows.” Captain Goebel explained, “I couldn’t tell what it was, honestly. I don’t know if it was money, paperwork, or what have you. I really don’t know what it was. But I could see they were handing each other something.”
 

 At no time did Captain Goebel indicate he believed the exchange to be a drug transaction or suspicious. Additionally, there was no evidence that Captain Goebel knew the suspicious person call was based on an anonymous tip of possible drug activity. More importantly, Captain Goebel never communicated this information to Deputy Sperandeo. In fact, Deputy Sper-andeo specifically testified | nthat he never discussed with Captain Goebel what happened before Deputy Sperandeo arrived. Thus, even if the exchange could be characterized as suspicious, Deputy Sperandeo had no knowledge of the exchange before he stopped the vehicle.
 

 The State also argues defendant attempted to flee and that flight from an officer can provide the reasonable suspicion needed for an investigatory stop. Deputy Sperandeo testified that as he turned into the parking lot, “the vehicle appeared to try to leave the area directly toward my vehicle.” Captain Goebel testified he thought the vehicle was going to ram the police unit after Deputy Speran-deo had pulled in front of it, so he ran up to the vehicle with his gun drawn and ordered the driver to stop, which he did. This evidence does not appear to show the vehicle was attempting to flee the officer.
 

 Deputy Sperandeo, who initiated the stop, admitted that he did not witness anything suspicious and effected the stop solely pursuant to the anonymous tip that defendant was possibly selling drugs. In the absence of any suspicious conduct or corroboration of information from which Deputy Sperandeo could conclude the anonymous caller’s allegation of criminal activity was reliable, we find that there was no reasonable suspicion to stop defendant.
 
 [4]
 

 For the reasons set forth herein, we conclude that the trial court erred in denying defendant’s motion to suppress evidence. This judgment is reversed, and the motion to suppress is granted. Accordingly, defendant’s conviction and sentence are vacated. This matter is remanded to the trial court for further proceedings consistent with this opinion.
 

 CONVICTION AND SENTENCE VACATED; REMANDED.
 

 [1]
 

 . The record shows count two was dismissed after defendant's conviction on count one.
 

 [2]
 

 . Christopher Jones was charged in the bill of information with possession of a firearm while in possession of marijuana. Jones testified that he pled guilty to the charge and is currently serving time.
 

 [3]
 

 . In determining whether the trial court’s ruling on a defendant’s motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial.
 
 State v. Triche,
 
 03-149 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 85.
 

 [4]
 

 . In his appellate brief, defendant requests an error patent review in Assignment of Error Number Two. In light of our ruling in the first assigned error, we find it unnecessary at this time to address any errors patent.