SUSAN M. CHEHARDY, Judge.
li>On appeal, defendant seeks review of his conviction for possession with intent to distribute crack cocaine. For the following reasons, we affirm his conviction.

Facts and Procedural History

Because defendant’s conviction resulted from a guilty plea without a trial, the facts presented were gathered from the hearing on defendant’s motions to suppress his statement and evidence. According to the testimony presented at that hearing, on or about November 21, 2008, Jefferson Parish Sheriffs Narcotics Officers, acting on information from an anonymous source, observed a man matching the description given by the tipster arriving at a specific home in Jefferson Parish in a black vehicle then lingering in the driveway. When the officers approached the man, they observed him handling three plastic bags containing off-white rocks, which field-tested positive for crack cocaine. The officers arrested the man, identified as defendant herein.
On December 23, 2008, the Jefferson Parish District Attorney filed a bill of information alleging that defendant, Andre D. Leonard, possessed crack cocaine [ 3with intent to distribute, in violation of La. R.S. 40:967(A). At his arraignment on January 5, 2009, defendant entered a plea of not guilty.
On May 4, 2010, the trial court denied defendant’s motions to suppress evidence and statement. Although defense counsel objected and noted his intent to seek review of those rulings, the record does not reflect that defense counsel sought supervisory review of those rulings.
On October 6, 2010, defendant pled guilty to possession with intent to distribute cocaine, reserving his right to appeal the adverse ruling on his motion to suppress evidence, pursuant to State v. Crosby.[1] On October 12, 2010, the trial judge sentenced defendant, pursuant to a written plea agreement, to fifteen years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence for the first two years, as articulated in La. R.S. 40:967(B)(4)(b).
Immediately thereafter, the State filed a multiple offender bill of information alleging that defendant, Andre Leonard, was a second felony offender. Defendant stipulated to the allegations in the multiple bill. The trial judge vacated defendant’s sentence on the underlying felony and imposed an enhanced sentence pursuant to La. R.S. 15:529.1 of fifteen years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[2] His enhanced sentence was ordered to run concurrently with his parole violation time.[3]
*540 On November 12, 2010,[4] defendant filed a written motion for appeal pursuant to Crosby, seeking review of the trial court’s denial of his motion to suppress evidence. Defendant’s motion was granted and this appeal follows.
Lin his only assignment of error, defendant argues that the trial court erred in failing to grant his motion to suppress the evidence. He argues that the police approached him without reasonable suspicion because they failed to adequately corroborate the anonymous tip. Further, defendant contends that the initial detention exceeded the limitations of an investigatory stop when the officers approached the vehicle with them weapons drawn and prevented him from leaving. Finally, defendant argues that there was no probable cause to arrest him so the illegally retrieved evidence should be suppressed as “fruits of the poisonous tree.”
The State responds that the trial court properly denied defendant’s motion to suppress. First, the officers had sufficient reasonable suspicion to approach defendant after corroborating the anonymous informant’s tip. Specifically, the anonymous source provided detailed “inside information” that reflected a familiarity with the suspect when he arranged, over a monitored cell phone, a bogus purchase of crack cocaine from the suspect at a specific time in a specific place.
The State provides that the officers corroborated the tip when, within the specific timeframe, a man matching the description given by the source, arrivéd at the location given by the source, in a vehicle matching the description given by the source. Further, the defendant was only briefly detained before the detective observed the crack cocaine in “plain view” in defendant’s mouth and hands. The State argues that, as soon as the detective observed the cocaine, probable cause existed to arrest the defendant, search for contraband, and legally seize any contraband that was discovered.
|5On May 4, 2010, a hearing was held on defendant’s motions to suppress evidence and statement.[5] Detective Julio Alvarado of the Jefferson Parish Sheriffs Office (“JPSO”), Narcotics Division, was the sole witness to testify at the hearing. Detective Alvarado testified that JPSO had received complaints of illegal narcotics sales on Lyons Street in Harahan so they began an investigation using information from a confidential source. Detective Alvarado explained that the anonymous source used a cell phone monitored by a JPSO officer, called the suspect’s cell phone, and asked to purchase a specific amount of crack cocaine. The suspect told the source to meet him at a specific house on Lyons in ten minutes, which would have been approximately 7:00 p.m. that night.
The source described the suspect as a heavy-set black male in his mid-20s who would be driving a black, four-door vehicle. The source also gave the officers the address of the house where the purchase was to occur. Although the source was not able to give them the suspect’s given *541 name, Detective Alvarado said the source gave them a nickname of “Dee.”
After the source spoke with the suspect on the phone, Detective Alvarado and his partner, Detective Schiff, parked their surveillance vehicle on North Dilton Street, which is perpendicular to Lyons, so they could observe any vehicles turning right onto Lyons. Within ten minutes, a man, driving a black, four-door Cadillac, turned right onto Lyons from North Dilton. The driver then pulled into the driveway of the house that the suspect had described to the officers and waited.
Detective Alvarado testified that, from his vantage point on the street, he clearly observed the driver as he pulled into the driveway. He noticed that the driver was a heavy-set African-American man wearing a black, hooded sweatshirt, which matched the description of the suspect that the source had given them.
| ^Detective Alvarado testified that the driver could have turned into a number of other driveways and had ample time to use this driveway to back up and leave the area. Instead, however, this vehicle remained immobile.
Detective Alvarado testified that the investigators’ objective was to verily the source’s information then proceed with an investigatory stop. So, once the officers had corroborated the source’s information, Detective Alvarado moved his car into the driveway behind the black vehicle. The detectives exited their vehicle and approached the vehicle. Detective Alvarado approached the driver’s door of the vehicle, while his partner walked to the passenger-side door.
According to Detective Alvarado, the vehicle’s windows were not tinted. The officers drew their weapons and announced themselves as police officers as they approached the vehicle. The driver looked at Detective Alvarado, who instructed the driver to show his hands.
At that point, the driver put his right hand into his sweatshirt pocket. When the driver removed his hand from his sweatshirt, two clear plastic bags containing off-white rocks fell from his hand: one bag landed on the console and one bag fell between the seat and the console.
When Detective Alvarado looked closely at the driver, he noticed that the driver had a knotted piece of plastic dangling from his mouth. Detective Alvarado recognized the knot as consistent with the way “crack” is packaged. Detective Alvarado removed the driver from the car, put him flat onto the ground, and told him to spit out the object. Defendant complied.
Right away, Detective Alvarado advised the driver of his constitutional rights pursuant to Miranda,[6] Defendant indicated that he understood his rights. Defendant admitted that the substance in the plastic package from his mouth, |7which tested positive for cocaine, was his, but denied ownership of the other packages.
Detective Alvarado also seized $1,063.00 in currency from defendant. First, defendant stated that the money was his father’s property. Defendant then revised his story to state that his girlfriend had given him the cash. Finally, he partially retracted that story to state that his father had given him $200.00 of the money.
The passenger in the vehicle was identified as defendant’s uncle. When Detective Alvarado conducted a criminal history check on each man, he learned that defendant had an outstanding fugitive attachment in the City of Gretna and his uncle had six outstanding traffic attachments from Jefferson Parish. Both men were *542 taken into custody. After hearing the testimony, the trial judge denied the motion to suppress evidence on the basis that the arresting officers had probable cause to conduct the arrest.
Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Roche, 05-237, p. 7 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. Id.
In a hearing on a motion to suppress evidence seized without a warrant, the State bears the burden of proving that an exception to the warrant requirement applies. State v. Lane, 09-179, p. 4 (La.App. 5 Cir. 9/29/09), 24 So.3d 920, 923, writ denied, 09-2360 (La.5/21/10), 36 So.3d 226 (citing La.C.Cr.P. art. 703(D)). A trial court’s denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors | ^suppression. State v. Anthony, 07-204, p. 6 (La.App. 5 Cir. 11/27/07), 971 So.2d 1219, 1224, writ denied, 08-0338 (La.1/16/09), 998 So.2d 98.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement. State v. Sam, 08-220, p. 5 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769, writ denied, 08-1984 (La.5/15/09), 8 So.3d 577. In Louisiana, a law enforcement officer may stop and question a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a criminal offense. Id.; La.C.Cr.P. art. 215.1(A).
To justify an investigatory stop, an officer must have reasonable suspicion of criminal activity. State v. Boss, 04-457, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. Reasonable suspicion, which is something less than probable cause to arrest, requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference. State v. Chauvin, 06-362, p. 7 (La.App. 5 Cir. 10/31/06), 945 So.2d 752, 757-58. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is inadmissible. Boss, 04-457 at 5, 887 So.2d at 585.
 The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. Lane, 09-179 at 5, 24 So.3d at 924. In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. Sam, 08-220 at 5-6, 988 So.2d at 769.
| a“An anonymous tip may provide probable cause for an arrest, Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), or reasonable suspicion for an investigatory stop, Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the suspect’s illegal activity.” State v. Smith, 00-1838, p. 1 (La.5/25/01), 785 So.2d 815, 816 (per curiam). See also, Lane, 09-179 at 5-6, 24 So.3d at 924 (citing Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 *543 L.Ed.2d 301 (1990)); Boss, 04-457 at 6, 887 So.2d at 586 (citing Alabama v. White, 496 U.S. at 332, 110 S.Ct. 2412).
Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. State v. Triche, 03-149, p. 6 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 85, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625. “[I]f a tip has a relatively low degree of reliability, more information will be required to establish the quantum of suspicion than would be required if the tip were more reliable.” Alabama v. White, 496 U.S. at 330, 110 S.Ct. at 2416.
Whether an anonymous tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. Boss, 08-220 at 6, 887 So.2d at 586. The sufficiency of an anonymous tip under Terry is determined by the reliability of its assertion of illegality and not just its tendency to identify a determinate person. Id.
In the present case, the officers corroborated information from the source to support a reasonable belief that the source had reliable information regarding the suspect’s illegal activity. Further, the source was able to predict defendant’s future [inbehavior. Detective Alvarado testified that the anonymous source used a monitored cell phone to call the suspect to set up a purchase of crack cocaine. Detective Alvarado’s supervisor monitored the call and heard the suspect say he would be at a certain address within ten minutes. The source gave the police the suspect’s nickname and physical description, including his race, gender, build, and age.
Further, the source correctly predicted the specific place and time, within ten minutes, that the suspect would arrive with contraband. The source was able to describe the vehicle defendant would be driving—a black, four-door vehicle. As the detectives surveyed the situation, they corroborated the source’s information when they observed a man, fitting the description of the suspect, drive up to the expected location in a vehicle that matched the description of the suspect’s vehicle within the specified time frame. As such, we find that the trial judge did not err in implicitly finding that the detectives possessed reasonable suspicion to justify the investigatory stop.
The next inquiry is whether the detention exceeded the limits of an investigatory stop. Defendant contends that he was arrested when the police blocked his vehicle and approached with their guns drawn.
“The vast majority of courts have held that police actions in blocking a suspect’s vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se.” United States v. Edwards, 53 F.3d 616, 619 (3rd Cir.1995). In United States v. White, 648 F.2d 29, 34-35 (D.C.Cir.1981), cert. denied, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981), the court noted that the use or display of arms may, but does not necessarily, convert a stop into an arrest. “Since an officer’s view of a suspect seated in a car is always partially obscured, the officer is at a disadvantage both when he approaches the occupant and when he Utries to question him through a car window.” Id. at 37. Moreover, the court recognized that the frisk component of a Terry “stop and frisk” is not available to protect the policeman if a suspect is sitting inside a closed car and the officer is on the outside. Id.
Further, inherent in the right to conduct a brief investigatory detention is *544 also the right to use reasonable force to effectuate the detention. State v. Morton, 08-164, p. 7 (La.App. 5 Cir. 7/29/08), 993 So.2d 651, 657. This Court recognized that since police officers should not be required to take unnecessary risks in pei*-forming their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a Terry stop. Morton, 08-164 at 8, 993 So.2d at 657.
Furthermore, guns and drugs frequently go hand-in-hand. State v. Warren, 05-2248, p. 18 (La.2/22/07), 949 So.2d 1215, 1229. See, United States v. Trullo, 809 F.2d 108, 113 (1st Cir.1987), cert. denied, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987) (quotation omitted) (“[T]o ... dealers in narcotics, firearms are as much ‘tools of the trade’ as are most commonly recognized articles of drug paraphernalia.”). Here, the police officers prevented the suspect from backing out of the driveway and approached on foot with their weapons draws. Because police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps, as they did here, that are reasonably necessary to protect their safety and to maintain the status quo during the course of a Terr~y stop.
The next inquiry is whether the contraband was seized in violation of our constitutions and, thus, inadmissible. The United States Supreme Court has carved out several exceptions to the warrant requirement that justify warrantless searches 11gin limited circumstances. State v. Morgan, 09-2352, p. 4 (La.3/15/11), 59 So.3d 403, 405-06.
“Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right to access to the object, they may seize it without a warrant.” State v. Leger, 05-0011, p. 65 (La.7/10/06), 936 So.2d 108, 155, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). Police may seize evidence under the “plain view” doctrine when: 1) there is prior justification for an intrusion into the protected area; and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband. State v. Tate, 09-619, p. 12 (La.App. 5 Cir. 2/9/10), 33 So.3d 292, 300-01 (citing Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). The “plain view” exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband. Tate, 09-619 at 12, 33 So.3d at 301.
A search incident to a lawful arrest is another of the clearly recognized exceptions to a warrantless search. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In a search incident to a lawful arrest, the officer may search the suspect’s person and the area within his immediate control in order to remove weapons and prevent destruction of evidence. State v. Andrishok, 434 So.2d 389, 391 (La.1983); State v. London, 01-1016, p. 9 (La.App. 5 Cir. 3/13/02), 815 So.2d 162, 166.
In the present case, we have already found that, while executing the lawful investigatory stop, the detective had a right to be standing near the vehicle’s driver at the moment that the driver withdrew two plastic packages containing off-white l^powdery rocks from his pocket. Further, defendant allowed a plastic package to dangle from his mouth while he spoke with Detective Alvarado.
*545 When Detective Alvarado observed the plastic packages containing off-white powdery rocks, he immediately recognized the rocks as contraband. Because possession of contraband, such as controlled dangerous substances, is unlawful, Detective Alvarado had probable cause to arrest the defendant at that moment.
In a search incident to the defendant’s arrest, the police officer can search the suspect’s person and the area within his immediate control in order to remove weapons and prevent destruction of evidence. Here, Detective Alvarado seized contraband within “plain view” while he was lawfully in a position to view that had an incriminating nature that was immediately apparent. Clearly, the State established sufficient support to justify this war-rantless search.
Further, even if the trial judge had found that the contraband was not subject to seizure under the “plain view” exception to the warrant requirement, the detectives discovered during the investigatory stop that defendant had an outstanding attachment, which provided probable cause for his arrest under La.C.Cr.P. art. 213(A)(4).[7] State v. Stamp, 98-193 (La.App. 5 Cir. 7/28/98), 718 So.2d 531, 533.
In sum, we recognize that the trial courts ruling on a motion to suppress is afforded great weight, which we will not disturb. This assignment of error lacks merit.
114Finally, defendant requests an error patent review, which this Court routinely performs in accordance with La.C.Cr.P. art. 920. There are several errors that require corrective action.
First, defendant pled guilty to possession with intent to distribute cocaine. However, the minute entry of defendant’s hard labor commitment, which reads that defendant pled guilty to “40:967.A F II SCHEDULE II DIST/ POSS. WITD OF A CDS (Crack Cocaine),” incorrectly references the statutory provision to which defendant pled guilty. In State v. Roche, 09-684, p. 7 (La.App. 5 Cir. 3/23/10), 39 So.3d 706, 710, writ denied, 10-0930 (La.11/19/10), 49 So.3d 396, the minute entry of defendant’s hard labor commitment referenced the statutory provision as “40:967.A F II Schedule II.” This Court remanded to allow the trial court to correct the commitment to conform to the transcript. Id.
Second, the language “DIST/POSS. WITD OF A CDS” suggests two crimes: distribution of CDS and possession with intent to distribute CDS. The transcript indicates that defendant pled guilty to possession with intent to distribute a Schedule II narcotic, which is a separate and distinct crime from distribution of a Schedule II narcotic. In State v. Alexander, 08-580, p. 10 (La.App. 5 Cir. 2/25/09), 8 So.3d 732, 738-39, writ denied, 09-0717 (La.12/11/09), 23 So.3d 912, this Court ordered the trial court to amend the commitment nunc pro tunc to properly reflect the offenses for which the defendant was convicted to prevent confusion.
Third, the hard labor commitment of defendant’s enhanced sentence states that the sentence was to run “concurrently with parole violation time and with any other sentence.” The sentencing transcript, however, reflects only that the enhanced sentence would run concurrently with “parole violation time,” but does not *546 reflect that the judge ordered the sentence to run concurrently with “any other 1 ^sentence.” Because the transcript prevails when there is a discrepancy,[8] the commitment should be corrected to delete the words “with any other sentence” to conform to the transcript.
Fourth, defendant was sentenced on the underlying felony to 15 years imprisonment at hard labor, with the first 2 yeai's of the sentence imposed without benefit of parole, probation, or suspension of sentence. La. R.S. 40:967(B)(4)(b). When the trial judge vacated defendant’s underlying sentence and imposed defendant’s enhanced sentence pursuant to La. R.S. 15:529.1, the trial judge sentence defendant to 15 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant’s enhanced sentence is illegal because parole has been restricted for the entire term of the sentence. Because La. R.S. 40:967(B)(4)(b) allows for parole eligibility after the first two years, and La. R.S. 15:529.1(G) prohibits only “probation or suspension of sentence” for the entire sentence, relator’s sentence should not prohibit parole eligibility after the first two years. State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). Therefore, under the authority granted to this Court under La.C.Cr.P. art. 882, we amend defendant’s enhanced sentence to reflect that the first two years of the 15-year sentence are to be served without the benefit of parole, probation, or suspension of sentence, and the remainder of the sentence is to be served without benefit of probation or suspension of sentence. State v. Sanders, 04-0017 (La.5/14/04), 876 So.2d 42 (per curiam).
Accordingly, this matter is remanded to the trial court to correct the minute entry of the hard labor commitment to conform to the sentencing transcript[9] as [^follows: (1) to clearly reference the correct statute to which the defendant pled guilty, (2) to clearly reference the correct offense to which defendant pled guilty, i.e., possession with intent to distribute cocaine, (3) to delete the reference that the enhanced sentence would run concurrently “with any other sentence,” and (4) to amend defendant’s enhanced sentence to reflect that the first two years of the 15-year sentence are to be served without the benefit of parole, probation, or suspension of sentence, and the remainder of the sentence is to be served without benefit of probation or suspension of sentence. State v. Johnson, 08-265, pp. 7-8 (La.App. 5 Cir. 8/19/08), 994 So.2d 595, 600. Further, the trial judge is ordered to direct the Clerk of Court for the 24th Judicial District to transmit a certified copy of the corrected minute entry to the officer in charge of the institution in which the defendant is incarcerated. See, La.C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, supra.
In sum, defendant’s conviction is affirmed. Defendant’s sentence is amended, and affirmed as amended. The matter is remanded to the district court for correction of the pertinent minute entry and further action consistent with this opinion.

CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED; MATTER REMANDED

. 338 So.2d 584 (La.1976).

. See, Error patent discussion, infra.

.See, Error patent discussion, infra.

. La.C.Cr.P. art. 914 provides, in pertinent part, that a party's motion for appeal must be made no later than thirty days after the rendition of the judgment or ruling from which the appeal is taken. Here, the trial judge sentenced defendant on his underlying conviction and as a multiple offender on October 12, 2010. Defendant's written motion for appeal, which was filed on November 12, 2010, was timely as the preceding day, November 11, 2010, was a legal holiday for all district courts in this state. See, La. R.S. l:55(E)(l)(a)(i).

. Defendant did not preserve his right to seek review of the denial of his motion to suppress statement nor does he challenge that denial on appeal.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. La.C.Cr.P. art. 213(A)(4), reads, in pertinent part, "A peace officer may, without a warrant, arrest a person when: ... The peace officer has received positive and reliable information that another peace officer from this state holds an arrest warrant, or a peace officer of another state or the United States holds an arrest warrant for a felony offense.”

. When there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).

. State v. Lynch, 441 So.2d at 734.