WICKER, J.
hln this medical malpractice proceeding, plaintiffs appeal the trial court judgment dismissing their suit for failure to comply with a prior trial court judgment ordering plaintiffs to post a bond pursuant to La. R.S. 40:1299.47. Plaintiffs also seek review of the trial court’s denial of their motion for new trial on the same issue. The question presented in this appeal is whether a plaintiff granted pauper status pursuant to La. C.C.P. art. 5181 et seq. is relieved of the statutory bond requirement in a medical malpractice suit as provided in La. R.S. 40:1299.47(I)(2)(c). For the following reasons, we find that the bond required under La. R.S. 40:1299.47(I)(2)(c) is security for a cost associated with medical malpractice litigation and, thus, a plaintiff granted pauper status is relieved of that bond requirement. Accordingly, we reverse the trial court judgments and remand this matter for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
On February 19, 2010, plaintiffs, Delories and Elvorn Tate, filed a medical malpractice action against Ochsner Clinic Foundation for personal injuries and other damages arising out of the alleged negligent placement of an IV into Delories Tate’s left hand during her hospitalization at Ochsner Hospital. On April 6, 2010, Ochsner filed an “Exception of Prematurity and/or Motion for Security For Costs,” asking the Court to order “plaintiffs to post a bond for all costs of the medical review panel pursuant to La. R.S. 40:1299.47.” Following a May 6, 2010 hearing, the trial judge issued a judgment granting Ochsner’s motion and ordering plaintiffs to post a cash or surety bond in the amount of $3,086.61 within 45 days from the signing of the judgment.[1] The *999 judgment further provided that plaintiffs’ “failure to |2comply with this order will result in sanctions as deemed appropriate by the court, up to and including, the dismissal of this case, with prejudice, without the need for any further hearing and upon ex parte motion of the defendant.”[2] On June 20, 2010, the 45th day after the trial court’s judgment, plaintiffs filed an “Ex Parte Motion for in Forma Pauperis Order in Lieu of Posting Bond,” with attached affidavits seeking pauper status pursuant to La. C.C.P. art. 5181 et seq. The trial court did not rule upon plaintiffs’ motion. However, on July 21, 2010, the trial judge signed a boilerplate order granting plaintiffs pauper status, allowing them to “prosecute or defend this litigation in accordance with Louisiana Code of Civil Procedure, Article 5181, et seq., without paying the costs in advance or as they accrue or furnishing security therefor.”
On August 30, 2013, Ochsner filed an “Ex Parte Motion to Dismiss” plaintiffs’ suit based upon their failure to post the statutory bond and comply with the trial court’s May 6, 2010 order. On September 3, 2013, the trial judge granted Ochsner’s ex parte motion to dismiss, dismissing plaintiffs’ suit with prejudice. The record reflects that notice of this judgment was never issued or mailed by the Clerk of Court.[3] Nearly two years later, on July 28, 2015, plaintiffs filed a motion for new trial. In their motion for new trial, plaintiffs argued that the July 21, 2010 granting of pauper status relieved them of the bond requirement as provided in La. R.S. 40:1299.47 and ordered in the May 6, 2010 judgment.
IsOchsner filed an opposition to plaintiffs’ motion for new trial, arguing that while La. R.S. 40:1299.47 provides a process by which a plaintiff may be granted pauper status during the medical review panel stage, plaintiffs failed to timely seek that status prior to litigation and, thus, they are responsible to post the statutory bond required under La. R.S. 40:1299.47(I)(2)(c). Following a hearing on October 20, 2015, the trial judge took the matter under advisement.[4] On November 17, 2015, the trial court issued a written judgment denying plaintiffs’ motion for new trial. This timely appeal follows.[5]
*1000 DISCUSSION
On appeal, plaintiffs argue that the trial court erred in dismissing their suit after the filing of their “Ex Parte Motion for in Forma Pauperis Order in Lieu of Posting Bond” and the trial court’s granting of their pauper application. Plaintiffs assert that the granting of pauper status relieved them of the statutory bond requirement and, thus, the trial judge erred in dismissing their suit with prejudice.
La. R.S. 40:1299.47(I)(2)(c) contains the statutory bond requirement at issue in this case and, in pertinent part, provides:
In a medical malpractice suit filed by the claimant in which a unanimous opinion was rendered in favor of the defendant health care provider as provided in the expert opinion stated in Paragraph (G)(2) of this Section, the claimant who proceeds to file such a suit shall be required to post a cash or surety bond, approved by the court, in the amount of all costs of the medical review panel. Upon the conclusion of the medical malpractice suit, the court shall order that the cash or surety bond be forfeited to the defendant health care provider for reimbursement of the costs of the medical review panel, unless a final judgment is rendered finding the defendant liable to the claimant for any damages. If a final judgment is rendered finding the defendant liable to the claimant for any damages, the court shall order that the | defendant health care provider reimburse the claimant an amount equal to the cost of obtaining the cash or surety bond posted by the claimant.
Pursuant to La. R.S. 40:1299.47(1)(2)(c), when the medical review panel renders a decision unanimously in favor of the defendant health care provider, as in the instant case, a claimant who files suit in the district court must “post a cash or surety bond... in the amount of all costs of the medical review panel.”
The medical review panel process is a preliminary, mandatory process for all claims arising out of alleged medical malpractice. La. R.S. 40:1299.47(B)(l)(a)(i) provides that “[n]o action against a health care provider covered under the MMA, or the insurer, may be commenced in any court before the plaintiffs proposed complaint has been presented to a medical review panel.” Alexander v. Shaw-Halder, 11-1136 (La.App. 5 Cir. 5/8/12), 95 So.3d 1100, 1105. In enacting the Medical Malpractice Act, the legislature has imposed upon a plaintiff seeking to file a lawsuit against a health care provider, a preliminary, mandatory “step” in the prosecution of medical malpractice litigation.
The Code of Civil Procedure provides a procedure for one who cannot afford to pay in advance certain costs associated with litigation. La. C.C.P. arts. 5181-5188.[6] This is a privilege, not a right, and one seeking to take advantage of this privilege must apply for permission to do so. La. C.C.P. art. 5183. The request to exercise this privilege can be made in the applicant’s first pleading or later in an ex parte motion. Harrison v. Minardi, 07-514 (La.App. 3 Cir. 10/31/07), 968 So.2d 1221, 1224. La. C.C.P. art. 5183 specifically provides that “[a] person who wishes to exercise the privilege granted in this Chapter shall apply to the court for permission to do so in his first pleading, or in an ex parte written motion if requested later” and, further, that the trial court “shall render an order permitting 15the applicant to litigate, *1001 or to continue the litigation of, the action or proceeding without paying the costs in advance, or as they accrue, or furnishing security therefor.”
The Medical' Malpractice Act references the pauper status granted under La. C.C.P. art. 5181 when the costs of the medical review panel must be paid by the claimant prior to litigation, at the medical review panel stage. For example, La. R.S. 40:1299.4Y(I)(2)(b) provides:
The claimant shall pay the costs of the medical review panel if the opinion of the medical review panel is in favor of the claimant. However, if the claimant is unable to pay, the claimant shall submit to the attorney chairman prior to the convening of the medical review panel an in forma pauperis ruling issued in accordance with La. C.C.P. art. 5181 et seq. by a district court in a venue in which the malpractice claim could properly be brought upon the conclusion of the medical review panel process. Upon timely receipt of the in forma pauperis " ruling, the costs of the medical review panel shall be paid by the health care provider, with the proviso that if the claimant subsequently receives a settlement or receives a judgment, the advance payment of the medical review panel costs will be offset.
Therefore, when the provisions of the Medical Malpractice Act require that a claimant pay the cost of the medical review panel prior to litigation, the Act recognizes the procedure by which a claimant may seek pauper status pursuant to La. C.C.P. art. 5181 et seq. Further, the Act instructs that such pauper status relieves a claimant of the responsibility to pay the “costs” required under the Act during the medical review panel stage. It necessarily follows that, once litigation has commenced, a claimant — who, like the plaintiff in this case, was not responsible for payment of the medical review panel costs prior to litigation but pursuant to the Act is subsequently required to post security in the district court for that cost after commencement of litigation — may apply to the district court and be granted pauper status under La. C.C.P. art. 5181 et seq. to relieve him or her of that cost or security therefor.
LUpon review of the record in the case, we first find that, although plaintiffs missed opportunities to apply for pauper status during the medical review panel stage and, further, lackadaisically waited until the 45th day following the May 6, 2010 judgment to apply for pauper status and avoid dismissal of their suit, plaintiffs’ application for pauper status was timely. See La. C.C.P. art. 5183. Further, we find that the granting' of pauper status under La. C.C.P. art 5181 et seq. relieved plaintiffs of the statutory bond requirement provided in La. R.S. 40:1299.47(I)(2)(e). Accordingly, we find that the trial judge erred in dismissing plaintiffs’ suit and in subsequently denying plaintiffs’ motion for new trial. We reverse the trial court judgments and. remand this matter for further proceedings.
JUDGMENTS REVERSED; MATTER REMANDED.

. In its appellate brief, Ochsner repeatedly refers to the May 6, 2010 judgment as a "Consent Judgment.” A consent judgment is a bilateral contract which is voluntarily signed by the parties and accepted by the court. DiLeo v. Hansen, 09-974 (La.App. 5 Cir. 6/29/10), 45 So.3d 1120, 1123. A valid consent judgment must be either reduced to writing or recited in open court and capable of being transcribed from the record of the proceeding. La. C.C. art. 3072. When an agreement is reduced to writing, it must be signed by the parties or their agents. Silvain v. Saer, 09-1103 (La.App. 5 Cir. 10/12/10), 49 So.3d 516, 519; Sullivan v. Sullivan, 95-2122 (La. 4/8/96), 671 So.2d 315, 317. The May 6, 2010 judgment is signed by neither party nor any attorney of record. Although the judgment provides that the court was "advised that counsel for Plaintiff has no opposition to the motion,” the record reflects that defense counsel (not plaintiffs’ counsel) advised the court that plaintiffs "agreed to post a bond within 45 days” but does not state whether plaintiffs’ counsel agreed to the consequences of an ex parte dismissal if they failed to do so. Moreover, the only signature on the judgment is the trial judge’s signature. For these rea *999 sons, we find that the May 6, 2010 judgment is not a consent judgment.

. Under La. C.C.P. art. 963, a court may grant an ex parte order without hearing the adverse party when "the order applied for by written motion is one to which mover is clearly entitled without supporting proof ...” Branch v. Young, 13-686 (La.App. 5 Cir. 2/26/14), 136 So.3d 343, 349. The practice of incorporating a sanction in an order and then imposing the sanction ex parte, however, is disapproved. Manning v. J.C. Penney Co., 30,-831 (La.App. 2 Cir. 8/19/98), 717 So.2d 271, 272-73.

. The record reflects that plaintiff, Delories Tate, is deceased and Elvorn Tate was substituted as her legal representative on June 26, 2013.

. The record reflects that the trial judge who ruled on the motion for new trial is not the same trial judge who ruled on Ochsner’s motion to dismiss.

.In its appellate brief, Ochsner argues that plaintiffs’ appeal of the September 3, 2013 and November 17, 2015 judgments is untimely. Ochsner did not file a motion to dismiss appeal nor did it file a separate answer to plaintiffs’ appeal. Nevertheless, the record reflects that plaintiffs’ appeal is timely. Notice of the September 3, 2013 judgment was never mailed by the Clerk of Court. Therefore, plaintiffs’ motion for new trial was timely because the time delays never commenced to run. See La. C.C.P. art. 2087; La. C.C.P. art. 1914. Further, the November 17, 2015 judgment was not mailed by the Clerk of Court until November 19, 2015. Because January 18, 2016 was a legal holiday, Martin Luther King, Jr. day, the plaintiffs' January 19, 2016 motion for appeal was timely. La. R.S. l:55(E)(l)(a)(i), State v. Leonard, 11-363, n.4 (La. App. 5 Cir. 11/15/11), 80 So.3d 535, 540.

. La. C.C.P. art, 5181, in pertinent part, provides, “an individual who is unable to pay the costs of court because of his poverty and lack of means may prosecute or defend a judicial proceeding in any trial or appellate court without paying the costs in advance or as they accrue or furnishing security therefor.”