STATE OF LOUISIANA

VERSUS

LARRY ST. AMANT, SR.

NO. 25-K-371

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Tran
First Deputy, Clerk of Court

September 24, 2025

Linda Tran
First Deputy Clerk

IN RE LARRY ST. AMANT, SR.

APPLYING FOR  SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE DONALD A. ROWAN, JR., DIVISION "L", NUMBER 24-2266

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Scott U. Schlegel

**WRIT DENIED**

Relator, Larry St. Amant, Sr., seeks supervisory review of the trial court's July 9, 2025 ruling denying his motion to suppress evidence. For the following reasons, the writ is denied.

On April 24, 2024, the Jefferson Parish District Attorney filed a bill of information charging relator with possession of cocaine weighing less than 2 grams in violation of La. R.S. 40:967(C) (count two).[1] Relator's co-defendant, Larry St. Amant, Jr., filed a motion to suppress evidence on October 10, 2024.[2] Relator did not file a separate motion to suppress evidence.[3] The trial court permitted the

---

[1] Larry St. Amant, Jr. was charged in count one in the same bill with intent to distribute cocaine weighing 28 grams or greater in violation of La. R.S. 40:967(A). The companion writ application of St. Amant, Jr. is filed in Case Number 25-K-365.

[2] Larry St. Amant, Jr. will be referred to as co-defendant.

[3] Although relator did not file a separate motion to suppress evidence, his co-defendant's motion may be presumed to apply to relator. We note that relator's counsel was present, examined the witness, and presented argument at the hearing. La. C.Cr.P. art. 842, provides that

25-K-371

motion to be heard as to both defendants at the same time. Following a hearing on July 9, 2025, the trial court denied the motion to suppress.

At the July 9, 2025 suppression hearing, Detective Jeremy Budo of the Jefferson Parish Sheriff's Office testified that in early 2025, he received information from a reliable confidential informant that St. Amant, Jr. was trafficking cocaine in Jefferson Parish. Surveillance was conducted, and a controlled buy was arranged, confirming the informant's information. Sometime thereafter, on March 5, 2024, detectives observed St. Amant, Jr. arrive at his residence on Fig Street in a red Lexus SUV, exit the front passenger seat, go inside, and return a short time later to the front passenger seat of that vehicle, after which they followed the vehicle and stopped it for a traffic violation. Detective Budo further testified that the confidential informant never mentioned relator and had no information on relator.

Detective Budo testified that relator was in the back seat of the vehicle when the vehicle was stopped, and that Detective Ronquille removed him from the back seat. Detective Budo further testified:

> A. And St. Amant, Sr. had a small bag of what we later learned was cocaine rubber-banded to his – to his leg –
>
> Q. Okay.
>
> A. – underneath his pants.
>
> ***
>
> Q. Okay. Now, you mentioned that there was a rubber band around his ankle and something had fallen from his leg, correct?
>
> A. Correct.
>
> Q. And who was the detective who claimed to have found that?

"[i]f an objection has been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all the defendants." This article applies, by analogy, to written motions. *State v. Jefferson*, 03-820 (La. App. 5 Cir. 1/27/04), 866 So.2d 931, 937, *writ denied*, 04-727 (La. 9/24/04), 882 So.2d 1166.

A. I believe it was Detective Ronquille.

Q. Okay. Do you know if anyone took a photograph of this – of the drug as it fell or after it fell or the rubber band?

A. No, sir. I don't know.

Q. Okay. Would that be helpful to have a photograph of the rubber band?

A. It would be, sir.

Q. Okay. And do you know – as far as you know, there is no photograph of the rubber band?

A. Correct, sir.

Relator does not challenge the traffic stop of the vehicle. Instead, relator argues that the search was conducted without probable cause and was not a search incident to arrest.

The trial court is vested with great discretion when ruling on a motion to suppress. *State v. McCarthy,* 21-153 (La. 4/20/21), 313 So.3d 1234, 1236. The trial court's findings of fact on a motion to suppress are reviewed under a clearly erroneous standard. *Id.*

Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. *State v. Roche*, 05-237 (La. App. 5 Cir. 4/25/06), 928 So.2d 761, 765, *writ denied*, 06-1566 (La. 1/8/07), 948 So.2d 120. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. *Id.*

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement. A police officer may stop an individual if he reasonably suspects that criminal activity may be afoot. *Id.* "Once an officer conducts an investigatory stop of a person pursuant to La. C.Cr.P. art. 215.1(B), the officer may

3

conduct a limited pat-down frisk for weapons if he reasonably believes he is in danger or that the suspect is armed." *State v. Gilbert*, 23-121 (La. App. 5 Cir. 11/8/23), 377 So.3d 378, 387, *writ denied*, 23-1640 (La. 5/29/24), 385 So.3d 704. It is not necessary that an officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that the officer establishes a "substantial possibility" of "danger." *State v. Gresham*, 97-1158 (La. App. 5 Cir. 4/15/98), 712 So.2d 946, 952, *writ denied*, 98-2259 (La. 1/15/99), 736 So.2d 200.

In a hearing on a motion to suppress evidence seized without a warrant, the State bears the burden of proving that an exception to the warrant requirement applies. *State v. Lane*, 09-179 (La. App. 5 Cir. 9/29/09), 24 So.3d 920, 923, *writ denied*, 09-2360 (La. 5/21/10), 36 So.3d 226 (citing La. C.Cr.P. art. 703(D)).

As discussed above, Detective Budo testified under oath that as lead detective, he learned that relator had a bag of cocaine rubber banded around his ankle and that it had fallen from relator's leg at some point. While we recognize that this testimony was undisputed and that arguments of counsel are not evidence, we find that the evidence presented by the State was insufficient for this Court to review the totality of the circumstances as it relates to relator.

Occasionally, this Court has vacated the denial of a defendant's motion to suppress and remanded the matter to the trial court to re-open the suppression hearing to receive testimony and evidence from additional witnesses. *See Bowman v. State*, 23-405 (La. App. 5 Cir. 10/2/23), 2023 WL 6382100. But in this case, such an order is unnecessary. Even assuming that relator would be able to establish during a future hearing that the search of St. Amant, Sr. exceeded the scope of *Terry,* suppression would still not be required due to the inevitable discovery doctrine.

4

The United States Supreme Court has explained that "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Nix v. Williams*, 467 U.S. 431, 446, 104 S. Ct. 2501, 2510, 81 L. Ed. 2d 377 (1984). In the case of *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, 127, the Louisiana Supreme Court summarized the inevitable discovery doctrine as follows:

> One of the theories courts use in addressing "fruit of the poisonous tree" issues is the inevitable discovery rule. The inevitable discovery doctrine "is in reality an extrapolation from the independent source doctrine: Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). A functional similarity exists between the independent source and inevitable discovery doctrines because both seek to avoid excluding evidence the police "would have obtained ... if no misconduct had taken place." *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State therefore bears the burden of proving by a preponderance of the evidence that "the information ultimately or inevitably would have been discovered by lawful means...." *Id.; State v. Vigne,* 01–2940 (La.6/21/02), 820 So.2d 533, 539. Application of the inevitable discovery doctrine thus "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment...." *Nix v. Williams,* 467 U.S. at 444, 104 S.Ct. at 2509 n. 5; *State v. Vigne,* 820 So.2d at 539.
> Integral to the proper application of the inevitable discovery doctrine is a finding that law enforcement *would* have inevitably secured the evidence by lawful means, not simply that they *could* have.

Here, the detectives smelled marijuana and were told by the driver of the vehicle that there were drugs in the vehicle. There is no reason to question the trial court's determination that the detectives smelled marijuana or that the driver admitted to marijuana being in the vehicle, as the trial court is in the best position to weigh the credibility of the witness. Further, the detectives eventually deployed a K-9 unit, which discovered drugs in the vehicle, supporting Detective Budo's testimony. Ultimately, five separate bags of marijuana were found in a jar on the floorboard of the backseat where relator was seated and a firearm was recovered in the driver's side door. Based upon the totality of the circumstances, this would have resulted in the arrest of relator. And a search incident to that arrest, either at

5

the scene or prior to booking at the jail, would have inevitably resulted in the discovery of the cocaine on his person.

Accordingly, we cannot say that the trial court erred in denying the motion to suppress. The writ is denied.

Gretna, Louisiana, this 24th day of September, 2025.

**SUS**
**FHW**
**JGG**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **09/24/2025** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**25-K-371**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable Donald A. Rowan, Jr. (DISTRICT JUDGE)
Thomas J. Butler (Respondent)          Thomas M. Calogero (Relator)

### MAILED

Taylor Somerville (Respondent)
Assistant District Attorney
Twenty-Fourth Judicial District
200 Derbigny Street
Gretna, LA 70053