887 So.2d 581 (2004)
STATE of Louisiana
v.
Kelly BOSS.
No. 04-KA-457.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*583 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, State of Louisiana, Terry M. Boudreaux  Appellate Counsel, Andrea F. Long  Counsel of Record on Appeal, Frank A. Brindisi  Trial Counsel, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA, CLARENCE E. McMANUS.
JAMES L. CANNELLA, Judge.
The Defendant, Kelly Boss, appeals from her conviction for possession of hydrocodone and her sentence to one year imprisonment at hard labor, suspended, with three years active probation and a $2500 fine. For the reasons which follow, we affirm.
On August 25, 2003, the Defendant was charged in a bill of information with possession of hydrocodone in violation of La. R.S. 40:967(C).[1] She initially pled not guilty and filed several pretrial motions including motions to suppress the evidence and her statement. After a hearing on December 15, 2003, the Defendant's motions to suppress were denied. On that same date, the Defendant withdrew her not guilty plea and entered a plea of guilty under Crosby[2] and La.C.Cr.P. art. 893.

FACTS
On July 21, 2003, Lieutenant Emile Larson received a phone call from an anonymous caller (AC) advising that the Defendant was going to sell her wedding ring *584 set to her sister for $2,000 and then obtain illegal narcotics for her husband. The AC identified herself as a member of the Defendant's family.[3] The AC gave Lt. Larson the Defendant's name and described her as a white female with brown hair and gave him the Defendant's approximate height and weight. The AC also described the vehicle that the Defendant would be driving as a grey Mercury Cougar. The AC advised that the ring transaction was going to take place at approximately 3:30 p.m. at the Whitney Bank on Jefferson Highway. She then advised that the Defendant would obtain the drugs after the transaction. Lt. Larson relayed this information to Detective Richard Valley, who had been present in the room during the phone conversation between Lt. Larson and the AC. Detective Valley proceeded to the Whitney Bank and set up surveillance. He observed a car fitting the description given by the AC pull into the parking lot, driven by a person matching the description given by the AC. Detective Valley immediately ran a check on the license plate of the vehicle and learned that it was registered to the Defendant.
Detective Valley watched the Defendant meet with another female in front of the bank. He observed the two engage in a short conversation and then depart in separate vehicles. Detective Valley initiated a moving surveillance of the Defendant, following her to 1804 South Clearview Parkway where she picked up a white male, later identified as Robert Perry (Perry). He followed the Defendant to the 6600 block of Kawanee Avenue where she dropped off Perry, who went inside an address on Kawanee. Detective Valley observed the Defendant circle the neighborhood for approximately five minutes before picking Perry up and driving back to 1804 South Clearview Parkway.
Once the Defendant returned to 1804 South Clearview Parkway, Detective Valley stopped her and advised her of the investigation. He advised the Defendant of her rights and interviewed her. The Defendant initially denied having any illegal narcotics. However, when Detective Valley asked her if she would mind turning out her pockets, the Defendant removed seventeen tablets of hydrocodone and gave them to him. The Defendant was arrested and later gave a taped statement.
The Defendant admitted that she drove Perry to Kawanee Avenue so that he could purchase hydrocodone. She denied selling her wedding rings but admitted that her husband used drugs, namely Vicodin, at the time of the incident.
Pursuant to the plea agreement, the Defendant was sentenced to one year imprisonment at hard labor which was suspended in favor of three years of active probation. She was also ordered to pay a fine of $2,500. The Defendant appeals the ruling, denying her motions to suppress the evidence and her statement.[4]

*585 ASSIGNMENT OF ERROR NUMBER ONE

The Defendant argues that the trial court erred in denying her motions to suppress the evidence and her statement because the officer lacked reasonable suspicion to conduct an investigatory stop when he stopped her vehicle. The Defendant argues that the officer did not have enough information from the anonymous caller to support reasonable suspicion of criminal activity. She argues that there was not enough predictability in the AC's information such as the type of drugs involved, the quantity to be purchased, the location of the purchase, or the time the drug transaction would occur. The Defendant contends that there was no testimony regarding the AC's reliability and basis of knowledge and that the officer did not observe any criminal activity when he conducted surveillance of her and the bank. The Defendant also argues that the officer lacked a reasonable belief that he was in danger to justify a pat and frisk. She contends that he had no justification for searching her because there was no evidence that his safety was threatened.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Duckett, 99-314 (La.App. 5th Cir.7/28/99), 740 So.2d 227, 230.
Law enforcement officers are authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La.App. 5th Cir.4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. Investigatory stops require reasonable suspicion of criminal activity. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Duckett, supra at 230. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible. State v. Triche, 03-149 (La.App. 5th Cir.5/28/03), 848 So.2d 80, 84, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625. Under certain circumstances, an informant's tip can provide reasonable suspicion to detain and question a person. State v. Rodriguez, 99-914 (La.App. 5th Cir.1/25/00), 761 So.2d 14, 17, writ denied, 00-599 (La.4/7/00), 759 So.2d 765. Generally, there must be some corroboration of the informant's tip and the tip must contain predictive information regarding the future behavior of the reported suspect. Alabama v. White, 496 U.S. 325, 110 S.Ct. *586 2412, 110 L.Ed.2d 301 (1990); State v. Robertson, 97-2960 (La.10/29/98), 721 So.2d 1268, 1270.
Whether an informant's tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); State v. Nelson, 02-65 (La.App. 5th Cir.6/26/02), 822 So.2d 796, 801, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627. The sufficiency of an anonymous tip under Terry is determined by the reliability of its assertion of illegality and not just its tendency to identify a determinate person. Florida v. J.L., 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000); State v. Triche, supra at 85. The anonymous caller's ability to predict the suspect's future behavior goes towards reliability, as it demonstrates inside information and a special familiarity with the suspect's affairs. Alabama v. White, 496 U.S. at 332, 110 S.Ct. 2412; State v. Triche, supra.
Independent corroboration of the details of an informant's tip by police investigation is valuable when applying the totality of the circumstances analysis. State v. Triche, supra at 85. A non-predictive anonymous tip paired with either police corroboration or independent police observation of unusual suspicious conduct can provide police with the reasonable suspicion needed to temporarily detain the suspect. State v. Robertson, supra at 1270; State v. Triche, supra. "If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v. White, 496 U.S. at 330, 110 S.Ct. 2412; State v. Morgan, 00-1501 (La.App. 5th Cir.3/28/01), 783 So.2d 514, 519. In a hearing on a motion to suppress, the state bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D).
The Defendant first argues that the anonymous tip was insufficient to justify an investigatory stop. In State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330, the Louisiana Supreme Court found that a tip from an untested confidential informant along with police surveillance gave police reasonable suspicion to stop the defendant. The tip named and described the defendant and indicated that he was selling drugs from a certain location. The tipster also described the defendant's car and provided its license plate number. Based on the tip, the officers set up a surveillance of the location and observed what they believed was a hand-to-hand drug transaction. The Supreme Court noted that the officers did not stop the defendant based solely on the information received from the tipster. Rather, the stop was based on the officers' observations coupled with the tip.
On the other hand, in State v. Robertson, supra, the Louisiana Supreme Court found the officers lacked reasonable suspicion to stop the defendant. The officers received an anonymous tip that the defendant, who was named and described, was selling drugs. The tip also described the vehicle that the defendant drove and stated where the vehicle would be parked when the defendant was not using it to sell drugs. The officers went to the location and saw the vehicle being driven away. They followed the vehicle and when the defendant stopped, the officers detained him and called for a canine unit. The Supreme Court found that, although the officers corroborated certain aspects of the tip, such as the defendant's name, physical description, and the location of the vehicle, the tip contained no predictive information. The Supreme Court noted that the tip "failed to predict the specific time period in which *587 the defendant would be engaged in illegal activity." State v. Robertson, supra at 1270. The Supreme Court stated:
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of the defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on the defendant's part, they would have had reasonable suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain the defendant.
Id. at 1270-1271.
In the present case, the tip by itself would not have given Detective Valley reasonable suspicion to stop the Defendant. However, the stop was not based solely on the tip. Rather, the stop was based on the tip, Detective Valley's corroboration of certain aspects of the tip, and Detective Valley's observation of suspicious activity by the Defendant consistent with drug activity.
The AC named and described the Defendant and her vehicle and stated that she would sell her wedding ring set around 3:30 p.m. at the Whitney Bank on Jefferson Highway. The AC then stated that the Defendant would obtain illegal narcotics after the wedding ring transaction. Detective Valley proceeded to Whitney Bank where he corroborated certain aspects of the tip such as the Defendant's presence, physical description, and vehicle. He observed the Defendant meet with someone but did not see any type of transaction. He then followed the Defendant as she left the bank. Thereafter, Detective Valley observed the Defendant pick up a passenger from one location and drop him off at another, while she circled the neighborhood for approximately five minutes, before retrieving the passenger once again. Detective Valley testified that this activity was consistent with drug activity. Based on the totality of the circumstances, we find that the officer's observations, coupled with the tip that the Defendant would be engaged in narcotic activity after her transaction at the bank, gave the officers reasonable suspicion to stop the Defendant.
The Defendant next argues that the officer was not justified in conducting a pat-down search. But, as pointed out by the State, Detective Valley testified that the hydrocodone pills were not discovered as the result of a protective frisk. Rather, the Defendant voluntarily gave them to the officer when he asked if she would mind turning out her pockets.
In State v. Duplessis, 391 So.2d 1116, 1118 (La.1980), the Louisiana Supreme Court held that "when one who is suspected of a crime voluntarily complies with a police request, to his own detriment, he cannot reclaim the rights which he has waived." In State v. Massey, 03-1166 (La.App. 5th Cir.1/27/04), 866 So.2d 965, this Court applied Duplessis and determined that the defendant's conduct of removing crack-cocaine rocks from her mouth after an investigatory stop was a voluntary act that did not implicate the Fourth Amendment. In Massey, the police conducted an investigatory stop of the defendant while responding to complaints from residents regarding individuals selling drugs in the area. When the police arrived in the area, they observed the defendant put something in her mouth. The officers approached the defendant and asked her to extract the object from her mouth at which *588 time the defendant removed three crack-cocaine rocks from her mouth and dropped them on the ground. On appeal, the defendant argued that the officer lacked reasonable suspicion of criminal activity when he ordered her to remove the cocaine from her mouth. This Court first concluded that the defendant had reasonable suspicion to conduct an investigatory stop based on the citizens' complaints, the area's reputation as a high crime area, and the defendant's suspicious action of placing something in her mouth. Moreover, the cocaine was lawfully recovered because the defendant was not unlawfully seized when she voluntarily relinquished the cocaine.
As discussed above, the police in the present case had reasonable suspicion to stop the Defendant. The record shows that the Defendant was approached by Detective Valley after she returned to 1804 South Clearview Parkway and advised that she was under investigation for narcotics activity. She denied having any illegal narcotics on her at which time Detective Valley asked her if she would mind turning out her pockets. The Defendant then reached into her pocket and retrieved 17 hydrocodone pills which she gave to Detective Valley. Detective Valley acknowledged that he could not have done anything if the Defendant had refused to turn out her pockets.
The Defendant testified that she was told that she had to empty her pockets and that she was advised that a female officer was coming to frisk her. In United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), the United States Supreme Court noted that "the use of language or tone of voice indicating that compliance with the officer's request might be compelled" may evidence a seizure. Detective Valley was asked on cross-examination what tone of voice he used in requesting that the Defendant turn out her pockets. As noted by the State in its brief, the trial court heard the tone of voice used by Detective Valley and apparently concluded that it was not such a menacing tone that compelled compliance. Based on the totality of the circumstances, we find no error in the trial court ruling denying the Defendant's motion to suppress upon finding that the initial stop was legal and that the Defendant voluntarily removed the hydrocodone pills from her pocket and handed them to the officer. This assignment of error has no merit.[5]

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors in this case.
Accordingly, for the reasons stated above, we affirm the Defendant's conviction for possession of hydrocodone and her sentence to one year imprisonment at hard labor, suspended with the imposition of three years active probation and a $2500 fine.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The bill of information also charged Robert Perry with possession of hydrocodone and John Draughon with possession with intent to distribute hydrocodone.
[2] State v. Crosby, 338 So.2d 584 (La.1976).
[3] The Defendant testified at the suppression hearing that she subsequently learned that the anonymous caller was her sister.
[4] It is noted that the Defendant failed to specify which pre-trial ruling she was reserving by pleading guilty under Crosby. The waiver of rights form does not mention any pretrial rulings nor does the plea colloquy. A defendant's failure to specify which pre-trial ruling he desires to reserve for appeal as part of a guilty plea entered pursuant to Crosby, may limit the scope of appellate review but does not preclude review altogether. State v. Joseph, 03-315 (La.5/16/03), 847 So.2d 1196 (per curiam). In Joseph, the Louisiana Supreme Court explained,

[a]bsent a detailed specification of which adverse pre-trial rulings the defendant reserved for appellate review as part of his guilty plea, an appellate court should presume that the trial court permitted a Crosby reservation no broader than necessary to effectuate the underlying purpose of conditional guilty pleas, i.e., to preserve review of evidentiary rulings which go to the heart of the prosecution's case that a defendant would otherwise waive by entering an unqualified guilty plea.
The Supreme Court stated that such rulings would include a motion to suppress the evidence or a confession. Id. at 1197. In the present case, the Defendant pled guilty immediately after the trial court denied her motions to suppress the evidence and her statement. Additionally, said motions were the only pre-trial motions ruled upon by the trial court. Thus, we find that the denial of the motions to suppress the evidence and statement are the pre-trial rulings which she was reserving and, are properly reviewable.
[5] It is noted that the Defendant challenged the denial of her motion to suppress the evidence and her statement. The Defendant made no separate argument regarding the admissibility of her statement other than to argue it is the fruit of a poisonous tree, i.e., fruit of an illegal seizure. The State addresses the admissibility of the statement by arguing that it was freely and voluntarily given after the Defendant was advised of and waived her rights. Since the Defendant's only assignment of error pertains to the legality of the investigatory stop, based on our findings on that issue, we likewise find no error relating to the admissibility of her statement.