CLARENCE E. McMANUS, Judge.
| gDefendant, J.H., pled guilty to possession of a firearm with an obliterated serial number. He now appeals, seeking review of the trial court’s denial of his motion to suppress. For the following reasons, we find the trial court erred in denying his motion to suppress. Thus, we reverse the trial court’s ruling on the motion to suppress, vacate defendant’s guilty plea and sentence and remand this matter for further proceedings.

STATEMENT OF THE CASE

On November 17, 2010, J.H., a 16-year-old juvenile, was charged by petition in juvenile court with possession of a firearm with an obliterated serial number in violation of LSA-R.S. 14:95.7. A hearing was held on a motion to suppress evidence. On December 15, 2010, the juvenile’s motion to suppress evidence was denied. On January 19, 2011, J.H. entered a guilty plea pursuant to State v. Crosby, 338 So.2d 584 (La.1976), and North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to the charge of possession of a firearm with an obliterated serial number in violation of LSA-R.S. 14:95.7. The defendant reserved his right to appellate review of the trial court’s denial of his motion to suppress. After a pre-disposition report was ordered and reviewed, on February 17, 2011, the juvenile court sentenced J.H. to a six month suspended sentence, and active probation for a period of two years. J.H. filed a timely motion for appeal which was granted by the juvenile court.

FACTS

|sThe following testimony was elicited at the hearing on the motion to suppress. Detective Derrick Leggett, of the Jefferson Parish Sheriffs Office, Street Crimes Unit, testified that on November 13, 2010, he was patrolling the Lincolnshire area in Jefferson Parish at approximately 9:00 p.m. According to Leggett, the Lincoln-shire area is a high crime area known for illegal narcotic usage and illegal sales and carrying of illegal weapons. Leggett further testified that he has made numerous arrests in the Lincolnshire area.
On the evening of November 13, 2010, Leggett and his partner, Detective Washington, were patrolling the Lincolnshire subdivision, in an unmarked unit with red lights on the dashboard, when he observed the juvenile defendant, J.H., standing in front of a convenience store with his right hand under his shirt. This aroused Leg-gett’s suspicion that J.H. might be carrying a weapon and that a crime was committed, or was about to be committed, so they elected to pull into the parking lot in front of the convenience store. Leggett testified that it would have been clear to anyone that they were police officers because they were dressed with a vest that had a Sheriffs badge on the front and back, and were carrying guns and handcuffs. Upon exiting their vehicle, J.H. noticed them and “quickly walked away.” The officers then “quickly stopped” J.H. and conducted a pat-down of his outer clothing for their safety. While conducting the pat-down, Leggett located a hand gun in J.H.’s front waistband where Leg-gett had previously observed J.H. with his right hand underneath his shirt. Leggett recovered the loaded 9mm handgun and noticed that it had an obliterated serial number so he placed J.H. under arrest. In his probable cause affidavit, Leggett explained the reason for the stop as follows: while patrolling a high crime drug trafficking area, he observed J.H. in front of a convenience store. When J.H. ob *1104 served the officers, he attempted to quickly walk away from the store.
|4On cross-examination, Leggett testified that he did not receive any reported complaints concerning J.H. Moreover, Leg-gett testified that when he passed in front of the store he only observed J.H. for a few seconds, his face was not covered, and he was not seen going in and out of the store.
Next, Detective Jeremiah Washington testified that on November 13, 2010, he and his partner, Leggett, were patrolling the Lincolnshire area. According to Washington, Lincolnshire is a high drug trafficking and violent crime area. Washington did not observe the juvenile, and thus, did not see the juvenile with his hand tucked in his shirt and under his pants, but he testified that Leggett did observe this behavior. Washington further testified that when they pulled into the parking lot of the store, J.H. noticed them and began to walk off so they got out of their vehicle, stated “hey come here let me talk to you,” and then “grabbed him.” Leggett conducted a pat-down of J.H. and found a handgun. Washington further testified that he did not recall whether there were street lights on in the store parking lot.

ASSIGNMENT OF ERROR NUMBER ONE

In his sole assignment of error, J.H. contends on appeal that the juvenile court erred in denying his motion to suppress evidence since such evidence was obtained in violation of his Fourth Amendment right. J.H. argues that “reasonable suspicion” was lacking when police officers approached him and conducted a search of his person. Accordingly, J.H. asserts that his detention and search, based solely on a hunch, was unlawful and thus, the fruits of the search should have been suppressed.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibits unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper 15remedy is exclusion of the evidence from trial. State v. Burns, 04-175, p. 4 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075. It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. State v. Stone, 94-155, p. 4 (La.App. 5 Cir. 7/26/94), 641 So.2d 652, 655, writ denied, 95-0631 (La.1/6/97), 685 So.2d 129 (citing State v. Owen, 453 So.2d 1202 (La.1984)).
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Ayche, 07-753, p. 6 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1148, writs denied, 08-2291 (La.1/30/09), 999 So.2d 752 and 08-1115 (La.2/13/09), 999 So.2d 1140. Moreover, a trial court’s pre-trial findings of fact involving the credibility of witnesses are entitled to great weight and will not be disturbed in the absence of clear abuse of discretion. State v. Yarbrough, 418 So.2d 503 (La.1982); State v. Robinson, 386 So.2d 1374 (La.1980); State v. Dunbar, 356 So.2d 956 (La.1978).
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement. State v. Sam, 08-220, p. 5 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769, writ denied, 08-1984 (La.5/15/09), 8 So.3d 577. The Terry standard, as codified in LSA-C.Cr.P. art. *1105 215.1, authorizes law enforcement officers to stop and question a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit a criminal offense and demand that a person identify himself and explain his actions. Id.; LSA-C.Cr.P. art. 215.1; State v. Belton, 441 So.2d 1195 (La.1988), cert. denied, 466 U.S. 958, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). A person is seized within the meaning of Article 1, Section 5 of the Louisiana Constitution when that person is either “actually stopped” or when an “actual stop” of the person is “imminent.” State v. Tucker, 626 So.2d 707 (La.1993); State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276. A person has not been “actually stopped” unless he submits to a police show of authority or is physically contacted by the police. An “actual stop” of the person is “imminent” only when the police come upon a person with such force that, regardless of the person’s attempt to flee or elude the encounter, an actual stop of the person is virtually certain. Id.
A lawful detention for questioning does not automatically give the officer authority to conduct a pat-down for weapons. State v. Sims, 02-2208 (La.6/27/03), 851 So.2d 1039. As the United States Supreme Court articulated in Terry v. Ohio, supra, “[e]ven after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger.” Id., 392 U.S. at 27, 88 S.Ct. 1868.
Investigatory stops require reasonable suspicion of criminal activity. State v. Boss, 04-457, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. State v. Boyer, 07-0476, pp. 17-18 (La.10/16/07), 967 So.2d 458, 469-70. Police do not have to ^observe what they know to be criminal behavior before investigating; the requirement is that the officers have a reasonable suspicion of criminal activity. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989.
The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference. Sam, supra. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible. Boss, supra. An officer’s mere unparticularized suspicion or “hunch” of criminal activity is insufficient to establish reasonable grounds to stop a person. United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); State v. Barney, 97-777, p. 4 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205, 1207.
Factors that may support reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes. State v. Martin, 99-123, p. 6 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102; State v. Massey, 03-1166 (La.App. 5 Cir. *1106 1/27/04), 866 So.2d 965, 969. While an individual’s mere presence in a high crime area, standing alone, is insufficient to justify an investigatory stop, his presence in a high crime area coupled with other suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop. Barney, supra. Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading 18to a finding of reasonable cause. State v. Hall, 581 So.2d 337 (La.App. 3rd Cir.1991). Although flight from police officers, alone, will not provide justification for a stop, this activity, however, is highly suspicious, and therefore may be one of the factors leading to a finding of reasonable cause. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
In this case, the officers stepped out of their vehicle and when J.H. started to “quickly walk away,” one officer stated “hey come here,” and then the officers grabbed J.H. and searched him. First, this constituted an investigatory stop because J.H. was not free to disregard the encounter and walk away. Thus, the focus shifts to whether the officers had reasonable cause to justify the investigatory stop. The officers observed J.H. standing in front of a convenience store, in a high crime area at 9:00 p.m., with his hand underneath his shirt and around his waistband. J.H. then attempted to quickly walk away after noticing the officers presence.
In State v. Williams, 621 So.2d 199 (La.App. 4 Cir.1993), the defendant was convicted of a drug offense and subsequently appealed the trial court’s denial of his motion to suppress. In Williams, officers on foot patrol saw the defendant standing in a courtyard. Upon seeing the uniformed officers, the defendant turned and immediately, and quickly, walked away. The officers testified that from behind they could see the defendant “go into his waistband area with both hands.” Id., 621 So.2d at 200. The officers testified that defendant may have been in possession of a weapon, therefore, they detained and frisked him. Id. The fourth circuit reversed the trial court’s ruling, holding that defendant’s flight by quickly walking away and putting his hands in his waistband immediately after seeing the police officers did not provide reasonable cause for an investigatory stop. The 19court also noted that the only action of the defendant prior to the stop was that the defendant saw them, immediately turned, and quickly walked away. Id., 621 So.2d at 201.
The Williams court also discussed the case of State v. Williams, 572 So.2d 756 (La.App. 4 Cir.1990), writ denied, 576 So.2d 30 (La.1991), in which a man was seen walking towards a van in a “high drug trafficking area” with a clasped hand. The defendant became nervous upon seeing the officers. The officers stopped the defendant’s van and conducted a search. The fourth circuit found that the act of walking away, with no other articulated grounds for suspicion, did not give the officers a sufficient basis to make an investigatory stop.
In the instant case, as in both Williams cases cited above, J.H. did not run from the officers, he quickly began to walk away from the officers and was only observed with his hand under his shirt near his waistband. Under the totality of the circumstances, we find the officers did not have reasonable cause to justify this investigatory stop and we find the trial court erred in denying the motion to suppress.
Accordingly, we reverse the trial court’s ruling denying the motion to suppress, va *1107 cate defendant’s guilty plea and sentence, and remand this matter to the trial court for further proceedings.

REVERSED & REMANDED

EDWARDS, C.J., concurs.