# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-953

**STATE OF LOUISIANA**

**VERSUS**

**RICKY J. CHARPENTIER**

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, DOCKET NO. 10-263
HONORABLE LORI ANN LANDRY, PRESIDING
**********

## SYLVIA R. COOKS
### JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

**REVERSED AND REMANDED.**

Harry A. Daniels, III
Daniels & Washington
830 Main Street
Baton Rouge, LA 70808
(225) 346-6280
COUNSEL FOR DEFENDANT/APPELLANT:
        Ricky J. Charpentier

J. Phil Haney, District Attorney
Angela B. Odinet, Assistant District Attorney
St. Martin Parish Courthouse
307 Church Street
St. Martinville, LA 70582
(337) 394-2220
COUNSEL FOR APPELLEE:
        State of Louisiana

**COOKS, Judge.**

Defendant appeals the trial court's denial of his motion to suppress illegally seized evidence.

## FACTS AND PROCEDURAL HISTORY

On November 4, 2009, deputies with the Iberia Parish Sheriff's Office received a tip from an anonymous caller that a person was in possession of a firearm. After several attempts to locate the "suspicious person with a firearm," the deputies eventually saw a vehicle fitting the description given by the complainant. While driving toward the vehicle, the deputies observed a person remove a rifle from the vehicle he had been driving and place it in the trunk of another vehicle. Upon seeing this, the deputies called for backup, and when backup arrived, the deputies approached the vehicles. All the persons at the scene were detained, handcuffed, and searched for officers' safety. Deputies were told the weapon, which was an assault rifle, belonged to Defendant, Ricky Charpentier, the driver of the vehicle fitting the description given by the complainant.

Defendant, who had prior felony convictions, was arrested and charged with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. Defendant filed a "Motion to Suppress Illegally Seized Evidence." A hearing was held on the motion, following which the motion was denied. Defendant then pled guilty to the charge but reserved his right to appeal the denial of the motion to suppress the evidence. He was sentenced that same date to ten years at hard labor, to run concurrently with any other sentence he may have been serving at the time.

Defendant has perfected a timely appeal, asserting that the trial court erred when it denied the "Motion to Suppress Illegally Seized Evidence." For the following reasons, we find merit to Defendant's claim and reverse the trial court's ruling and remand the matter for further proceedings.

## ANALYSIS

Defendant argues he was arrested without probable cause when the police surrounded his vehicle, ordered him to the ground, and handcuffed him. He contends neither the anonymous caller's tip nor the deputy's observation of him putting a rifle into the trunk of a vehicle established probable cause sufficient to support an arrest. Therefore, Defendant argues, the evidence should be suppressed.

The State cites *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968) and argues there was reasonable suspicion that Defendant had committed, was committing, or was about to commit a crime. The State asserts that Defendant was not arrested until after the deputy determined he was a felon and had a firearm in his possession. Accordingly, the investigatory stop was a legal detention, and the trial court did not err when it denied the motion to suppress the evidence.

At the suppression hearing, Deputy Gaylord Boyd, a patrol officer with the Iberia Parish Sheriff's Office, stated while on patrol, on November 4, 2009, he and his partner, Deputy Sonnier, were "dispatched to a complaint involving a suspicious person with a firearm." He explained that based on the "unknown complainant's" instructions, he went to an area of town where the suspect was supposed to be located in a vehicle. The described vehicle was not at that location. However, when he told the dispatcher he could not locate the vehicle, the dispatcher informed him that the complainant was still on the line and indicated a different location. The vehicle was also not at the second location. The deputies decided to drive around and shortly thereafter spotted a vehicle similar to the vehicle described by the complainant parked alongside the roadway. The vehicle was parked directly behind another vehicle. As the deputies drove towards the vehicle, they observed a person remove a rifle from the vehicle he had been driving and place it in the trunk of the other vehicle. Deputy Boyd described the rifle as a

2

7.62x39 SKS assault rifle. The record does not state whether the deputy recognized the rifle as an assault rifle prior to or after obtaining custody of the gun.

There were two other men on the scene, Dwayne Laviolette, who owned the second vehicle, and his passenger, Mr. Delahoussaye. There was also an unidentified female in the Defendant's vehicle. The deputy testified that he called for backup and waited until Defendant placed the rifle in the trunk of the second vehicle. Once backup arrived, he and his partner approached. He stated that "[a]t that point everybody was detained." Each person was handcuffed and searched for officers' safety. Deputy Sonnier advised Laviolette and Delahoussaye of their rights and questioned them. When asked if anyone made any statements, Deputy Boyd stated that "Mr. Laviolette made the statement that it was not his rifle and for Mr. Charpentier; the suspect could tell us the truth about the weapon." Laviolette voluntarily opened the trunk of his vehicle, and Deputy Boyd took custody of the rifle.

Deputy Boyd stated that Defendant told him "he used it [the rifle] and was going to use it to help some of his homeboys out that was [sic] having problems at the St. Edwards housing apartment over on Mississippi Street." Deputy Boyd agreed that although he recorded Laviolette's statement in his police report, he did not note Defendant's statement. During this time, dispatch advised him that Defendant had prior felony convictions. Defendant was then placed under arrest.

Deputy Boyd stated he never spoke with the person who called regarding someone with a firearm. He had no idea who the caller was, and the caller never gave a name. He stated he was not even sure if the caller knew the occupant of the vehicle.

Deputy Boyd further described the scene upon initial contact with the three men. Three or four other patrol cars arrived within fifteen to thirty seconds of his call for a backup with lights and sirens activated. Defendant's vehicle and the

3

second vehicle were surrounded. All the officers had their weapons pulled and pointed at the men. They were ordered to their knees and handcuffed prior to being searched for weapons.

Following this testimony, the trial court denied the motion to suppress, stating that "[r]easonable suspicion did exist at that time for them to detain and ask questions pursuant to the Constitution and the clarification thereof."

Defendant argues in brief that even though Deputy Boyd testified he did not formally arrest Defendant until after he learned that Defendant was a convicted felon, the actions of the police constituted an effective arrest of the three men. He contends that he "was arrested when the officers pointed their handguns at him, ordered him to get down on his knees and not move until he was forcibly restrained by the officers placing handcuffs on him." Defendant argues, however, there was no probable cause to arrest him.

In brief, the State does not address whether the police action constituted an arrest with or without probable cause. The State argues there was reasonable suspicion to conduct an investigatory stop based on the anonymous call and the deputies' observations pursuant to La.Code Crim.P. art. 215.1.

Louisiana Code of Criminal Procedure Article 215.1(A) provides:

> A law enforcement officer may stop a person in a public place whom he suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.

The State agrees it is not a crime for a citizen to possess a gun. However, "[a]s Officer Boyd clarifies it is suspicious for an individual to transport a semi-automatic rifle and to change its location in the middle of the street."

While discussing investigatory stops, the fifth circuit noted:

> The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. But the right of law enforcement

4

officers to stop and interrogate those reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1 and by state and federal jurisprudence. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Belton,* 441 So.2d 1195 (La.1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).

Although Article 215.1 permits an officer to stop a citizen in a public place and question him, such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, a criminal offense. *State v. Temple*, 02-1895, p. 4 (La.9/9/03), 854 So.2d 856, 860; *State v. Collins*, 04-751, p. 3 (La.App. 5 Cir. 11/30/04), 890 So.2d 616, 618. The detaining officer "'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . .'" *State v. Collins*, *supra*, quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Moreover, the officer must be able to articulate specific facts upon which his suspicion is based. *State v. Becnel*, 04-1266 (La.App. 5 Cir. 5/31/05), 904 So.2d 838, 852.

In determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, "giving deference to the inferences and deductions of a trained police officer 'that might well elude an untrained person.'" *State v. Huntley*, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049 (per curiam), quoting *Cortez,* 449 U.S. at 418, 101 S.Ct. at 695. Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his or her knowledge of recent criminal patterns, and his or her knowledge of an area's frequent incidence of crime. *State v. Mitchell,* 04-136 (La.App. 5 Cir. 6/29/04), 877 So.2d 1151, 1155.

The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA- C.Cr.P. art. 701D. The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. *State v. Cooley*, 03-418 (La.App. 5 Cir. 9/30/03), 857 So.2d 1209, 1216, *writ denied*, 03-3107 (La.3/12/04), 869 So.2d 818. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. *State v. Becnel, supra.*

*State v. Clay*, 06-37, pp. 4-5 (La.App. 5 Cir. 4/25/06), 930 So.2d 1028, 1031-32

(alteration in original).

5

In *Clay,* where the fifth circuit did not find "reasonable suspicion," two deputies received an anonymous tip that gunfire was heard on a particular street. Upon arriving at the street, the deputies saw two men walking from the direction of the reported gunfire. One deputy conducted a field interview while the second deputy frisked one of the defendants. Crack cocaine was found in one of his pockets. The defendant argued that an anonymous report of gunfire and his presence in a high crime area was not enough to support reasonable suspicion for an investigatory stop. The fifth circuit agreed, noting:

> Under certain circumstances, an informant's tip can provide reasonable suspicion to detain and question a person. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *State v. Smith*, 00-1838 (La.5/25/01), 785 So.2d 815, 816 (per curiam). Whether an informant's tip creates reasonable suspicion necessary to justify an investigatory stop is determined by considering the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983); *State v. Boss*, 04-457, p. 6 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 586. The anonymous caller's ability to predict the suspect's future behavior goes toward proving reliability, as it demonstrates inside information and a special familiarity with the suspect's affairs. *See, Alabama v. White*, 496 U.S. at 332, 110 S.Ct. at 2417; *State v. Boss, supra.* Independent corroboration of the details of an informant's tip by police investigation is valuable to the totality of the circumstances analysis. *State v. Boss, supra.* A non-predictive anonymous tip paired with either police corroboration or independent police observation of unusually suspicious conduct can provide police with the reasonable suspicion needed to temporarily detain the suspect. *Id.* "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Alabama v. White*, 496 U.S. at 330, 110 S.Ct. at 2416. *See also, State v. Boss, supra.*

The evidence adduced at the suppression hearing shows that the officers did not have reasonable suspicion to stop defendant. First, the anonymous tip had a low degree of reliability. Deputy Franklin testified that the caller did not report having *seen* someone firing a gun; rather, this person had only *heard* gunshots. Further, there was no description given of a perpetrator. Deputy Franklin could not say how long it took her to get to Pailet Street after she was dispatched. The greater the time span, the less likely it was that the perpetrator

6

would still be at or near the scene. While the officer had reason to believe a crime (illegal discharge of a firearm) had been committed, she did not have reasonable suspicion that *defendant* had committed a crime. Deputy Franklin testified that neither defendant nor his companion exhibited behavior that indicated they were carrying weapons. She stopped them because they happened to be in the area where the gunfire was reported.

The officer stated she knew the street where she saw defendant as a high crime area with a great deal of drug activity. However, a person's mere presence in a high crime area, without more, does not provide police with reasonable suspicion based upon articulable facts to make an investigatory stop. *See, State v. Washington,* 03-1134 (La.App. 5 Cir. 2/10/04), 866 So.2d 1058, 1062. *See also, State v. Blasio*, 98-0077 (La.App. 4 Cir. 10/21/98), 720 So.2d 749, 750 ("A stop in which a defendant is merely walking in a high crime area is unjustified").

*Id.* at 1032 (alteration in original).

In the current case, Deputy Boyd testified he had no clue as to who the anonymous caller was. He did not speak to the caller directly but was advised through the dispatcher. Deputy Boyd was told only that someone had a firearm in his vehicle. There was only a description of the vehicle. He was not told who the person allegedly possessing the firearm was nor was he given a description of the person. He was not told whether the caller saw the person fire the rifle, point the rifle at anyone, or heard threats to do so. Further, the vehicle was not in the two locations the caller said it could be found. The deputies only located Defendant because he was driving around the area and spotted a vehicle similar to the one described by the caller.

Finally, as noted above, a non-predictive anonymous tip together with independent police observation of *unusually* suspicious conduct can provide police with the reasonable suspicion needed to temporarily detain the suspect. In the current case, the deputy, when asked, "How often do you see people transporting

7

semiautomatic assault rifles from one trunk to another in the middle of the street?" he replied, "Not often," and then agreed it was suspicious.

However, the tip which was relied on in this case was of a very low degree of reliability with no identification of the alleged offender and that, despite the deputy's agreement otherwise, transferring a weapon from the trunk of one vehicle to another vehicle's trunk is not a suspicious activity—such as observing one person slipping money into the hands of another who surreptitiously slips a small quantity of something into the purchaser's hand while standing on a street corner, which in an experienced officer's opinion could very well be an illegal drug transaction.

The State argues that Laviolette consented to the search of his vehicle and that Defendant, after he had been *Mirandized*, admitted he used and planned to use the rifle; therefore, there were "no grounds to challenge the admissibility of the statements given."

As for Laviolette's consent to search the trunk of his vehicle, under Louisiana law, any person adversely affected by a warrantless search and seizure may raise the violation of a third person's constitutional rights. *State v. Jackson*, 09-1983 (La. 7/6/10), 42 So.3d 368. In *State v. Owen*, 453 So.2d 1202, 1206 (La.1984) (citations omitted), the supreme court explained:

> [I]f the consent was obtained after an illegal detention or entry, the consent was valid only if it was the product of a free will and not the result of an exploitation of the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct.

8

*See also State v. Harris,* 09-62 (La.App. 3 Cir. 10/7/09), 21 So.3d 437, wherein this court found that the State failed to meet its burden to prove that the defendant gave his consent and that the consent was free and voluntary.

Furthermore, "[s]tatements given during a period of illegal detention are inadmissible, even though voluntarily given, if they are the product of illegal detention and not the result of an independent act of free will." *State v. Fisher*, 97-1133, p. 11 (La. 9/9/98), 720 So.2d 1179, 1185. While a defendant has the burden of proving the grounds for his motion, the State has the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant. La.Code Crim.P. art. 703(D).

In *Fisher*, following a fatal shooting, "'people in the neighborhood'" who did not see the shooting told the police that Fisher committed the killing. *Id.* at 1181. Months later, the police spotted Fisher as a passenger in a vehicle and pulled the vehicle over. They handcuffed him and put him into the police unit to transport him to the police station. During this time, the defendant apparently made three incriminating statements. After being convicted of second degree murder by a jury, he appealed the trial court's denial of his motion to suppress the statements. The supreme court found that Fisher had been effectively arrested without probable cause and that the trial court erred when it denied his motion to suppress the statements. The supreme court stated:

> The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty. *State v. Allen,* 95-1754 (La.9/5/96); 682 So.2d 713. A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave. *Allen*, 682 So.2d at 719; *Moreno*, 619 So.2d at 65 (citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an *extended* restraint on the persons liberty. *Allen,* 682 So.2d at 719; *State v. Simms*, 571 So.2d 145, 148 (La.1990).

In the present case, the police forcibly restrained defendant by handcuffing him and putting him in the back seat of the police car bound for the station. No reasonable person in this position could have believed he or she was "free to go," and indeed defendant was not. In addition, Officer Taylor testified that he intended to take defendant to the police station, indicating an unmistakable intent to impose a restriction on defendant's liberty more extensive than an investigatory stop.

Arrests have been found in many similar situations. *See, e.g., Dunaway v. New York,* 442 U.S. 200, 218-19, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (finding that an arrest occurred when the defendant was "picked up" and brought in for questioning about a murder); *United States v. Gentry,* 839 F.2d 1065, 1070 (5th Cir.1988) (finding an arrest when the defendants were removed from their vehicle at gunpoint); *Passman v. Blackburn,* 797 F.2d 1335, 1346 (5th Cir.1986) (finding the suspect was "unquestionably" arrested by being handcuffed, placed in a police car and driven to the station).

Under the totality of the circumstances in the present case, defendant was under arrest when he allegedly made his statements.

*Id.* at 1183-84 (emphasis in original).

In the current case, the three men were ordered out of their vehicles at gunpoint by at least five to seven officers, ordered to their knees, and then handcuffed. While still on their knees, the deputies began questioning the three men. We find at this point the three men were effectively arrested at this point without probable cause. In *State v. Porche,* 06-312, pp. 7-9 (La. 11/29/06), 943 So.2d 335, 339-40, the supreme court discussed what circumstances effectuated an arrest:

Inherent in the right of the police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. *Mena,* 544 U.S. at 99, 125 S.Ct. at 1470 ("'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'") (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989)); *United States v. Perdue,* 8 F.3d 1455, 1462 (10th Cir.1993) ("Since police officers should not be

required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry* ] stop.'") (quoting *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 683-84, 83 L.Ed.2d 604 (1985)).

Nevertheless, the use of handcuffs incrementally increases the degree of force used in detaining an individual. *Mena,* 544 U.S. at 99, 125 S.Ct. at 1470 ("The imposition of correctly applied handcuffs on Mena, who was already being lawfully detained during a search of the house, was undoubtedly a separate intrusion in addition to detention in the converted garage."); *State v. Broussard,* 00-3230, p. 4 (La.5/24/02), 816 So.2d 1284, 1287 ("'There is no question that the use of handcuffs, being one of the most recognizable indicia of a traditional arrest, substantially aggravates the intrusiveness of a putative *Terry* stop.'" (quoting *United States v. Acosta-Colon*, 157 F.3d 9, 18 (1st Cir.1998)(internal quotation marks omitted)). Thus, because the police conducting an investigatory stop "may not . . . seek to verify their suspicions by means that approach the conditions of arrest," *Florida v. Royer*, 460 U.S. 491, 499, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983), the use of handcuffs must appear objectively reasonable "in light of the facts and circumstances confronting [the police]," taking into account "the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872; *Broussard*, 00-3230 at 4, 816 So.2d at 1287 ("'Thus, when the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a *Terry* stop, it must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm.'") (quoting *Acosta-Colon*, 157 F.3d at 18-19). If the added intrusion is not warranted under particular circumstances, a *Terry* stop may escalate into a de facto arrest requiring probable cause to render it valid. *United States v. Melendez-Garcia*, 28 F.3d 1046, 1053 (10th Cir.1994)("Because the specific nature of this stop [in which defendant was handcuffed and strapped into a police cruiser] was not justified under the *Terry* doctrine, we must treat it as an arrest, requiring probable cause."); *Broussard*, 00-3230, pp. 3-4, 816 So.2d at 1287 ("[B]revity alone does not always distinguish investigatory stops from arrests, as the former may be accompanied by arrest-like features, *e.g.*, use of drawn weapons and handcuffs, which may, *but do not invariably*, render the seizure a *de*

*facto* arrest.") (citing *Acosta-Colon*, 157 F.3d at 18-19)(emphasis added).

While the deputy testified the three men were handcuffed for officer safety, he had also stated that they waited until the rifle had been placed into the trunk of the vehicle before they approached. There was no testimony otherwise that the deputies had any reason to believe Defendant or the two men were armed and violent. This was not suspected drug activity or any other reported violent crime, and possession of a firearm is not necessarily indicative of a violent nature.

In *Fisher*, 720 So.2d 1179, 1185-86, the supreme court went on to determine whether the statements made by the defendant were the result of an independent act of free will:

> Statements given during a period of illegal detention are inadmissible, even though voluntarily given, if they are the product of illegal detention and not the result of an independent act of free will. *Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

> The fact that the accused would not have made a statement "but for" the illegal arrest does not alone establish a causal link sufficient to require exclusion of the statement. *Brown*, 422 U.S. at 602-03, 95 S.Ct. 2254. On the other hand, the fact that an accused may have been properly informed of his constitutional rights and waived them, while relevant, does not alone break the causal link. *Taylor* [*v. Alabama*], 457 U.S. [687] at 690, 102 S.Ct. 2664; *Brown*, 422 U.S. at 601, 603, 95 S.Ct. 2254 (holding Miranda warnings are not a "talisman"). Other factors in assessing the link between the illegal arrest and the statements are the existence of intervening circumstances, the "temporal proximity" of the arrest and the statements, and the "purpose and flagrancy of the official misconduct." *Brown,* 422 U.S. at 604, 95 S.Ct. 2254. *See also Taylor,* 457 U.S. at 690-91, 102 S.Ct. 2664; *Dunaway v. New York*, 442 U.S. 200, 218-19, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

> In the present case, there was no significant time lapse between the unlawful arrest and the statements in the back of the police car and at the police station, which were made shortly after the arrest. Moreover, there were no significant intervening circumstances.

While the deputy testified that the three men had been *Mirandized,* the fact they may have been advised of their rights, in this case, did not break the causal link. There were no intervening circumstances. The men were ordered to their knees at gunpoint by numerous law enforcement officers, handcuffed, and immediately questioned, all without probable cause or reasonable suspicion that they had committed, were committing, or about to commit a crime. The evidence and statements were inadmissible for the reason the detention was illegal and that there were no intervening circumstances between the discovery of the rifle and Defendant's statements which would show an independent act of free will. Accordingly, the trial court erred when it denied Defendant's motion to suppress the evidence.

## DECREE

For the foregoing reasons, we find reverse the trial court's denial of the motion to suppress. As a result, Defendant's guilty plea must be vacated and the matter is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**