STATE OF LOUISIANA IN THE INTEREST OF J.G.

\*      NO. 2023-CA-0629

\*

\*      COURT OF APPEAL

\*      FOURTH CIRCUIT

\*      STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2023-176-03-DQ-C, SECTION "C"
Honorable Candice Bates Anderson, Judge
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Nakisha Ervin-Knott)

**LOBRANO, J., CONCURS IN THE RESULT**
**ERVIN-KNOTT, J., CONCURS IN THE RESULT**

Jason R. Williams
DISTRICT ATTORNEY
Brad Scott
Chief of Appeals
Patricia Amos
Assistant District Attorney
Orleans Parish District Attorney's Office
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLEE

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

      COUNSEL FOR DEFENDANT/APPELLANT

      **AFFIRMED**
      **DECEMBER 7, 2023**

Defendant-Appellant, J.G., appeals the denial of a Motion to Suppress and his adjudication for being a minor in possession of a handgun. J.G. asserts that there was no reasonable and articulable suspicion to justify the police officers' stop of J.G. and two other youths on the sidewalk along Jackson Avenue in New Orleans. J.G.'s response to the initial stop resulted in a pat down that revealed a concealed weapon. We find no merit in J.G.'s argument and we affirm the juvenile court's ruling for the reasons that follow.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On June 22, 2023, Officer Cody O'Dell ("O'Dell") was patrolling on Jackson Avenue. During his patrol, he noticed three individuals walking on the sidewalk. O'Dell noticed that the group kept looking back at the police car and that one of the individuals appeared to be holding his waistband. O'Dell turned his car around to get a better look at the individuals. O'Dell pulled over, and his partner began talking to the group and subsequently called the group towards the car. Two of the individuals approached the car, but J.G. stayed at a distance with his back turned.[1] After a brief delay, J.G. approached the car. O'Dell's partner was then able

---

[1] O'Dell stated J.G. stayed about 15 feet away before ultimately approaching the car.

to see a bulge in J.G.'s pocket and a "sag" in his hoodie. O'Dell's partner asked J.G. to show him what was in his pocket. When J.G. did not comply, the policemen put J.G. in handcuffs and O'Dell got out of the car and began to frisk J.G. As O'Dell was checking the pocket, a gun fell out the hoodie.[2]

J.G. entered a denial at his Answer Hearing on July 18, 2023, and the court set an adjudication hearing that took place on August 28, 2023. The court denied J.G.'s motion to suppress the evidence derived from the stop and frisk. J.G. sought to enter a Crosby plea preserving the issue on appeal. That request was also denied. After trial, the court adjudicated J.G. delinquent for possessing a firearm. J.G. filed this appeal seeking reversal of the denial of the motion to suppress the adjudication.

**LAW AND ANLYSIS**

"The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression." *State v. Ayche,* 07-753, p. 6 (La. App. 5 Cir. 3/11/08), 978 So.2d 1143, 1148. An investigatory stop is an exception to the warrant requirement of the U. S. Constitution's Fourth Amendment.[3] If a law enforcement officer has a reasonable suspicion that a person in a public place is committing, has committed, or is about to commit a criminal offense, La. C. Cr. P. art 215.1 authorizes the officer to stop the person and demand that he identify himself and explain his actions. [4] In determining whether the police possess the requisite level of objective justification for an investigatory stop, courts must look at the totality of the

---

[2] J.G. claimed that the gun was not his.
[3] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),
[4] *State v. Belton*, 441 So.2d 1195 (La. 1983), *cert. denied*, 466 U.S. 953, 104 S. Ct. 2158, 80 L. Ed. 2d 543 (1984).

2

circumstances of each case. This process allows officers to draw on their own experience and specialized training to make inferences from the cumulative information available to them.[5]

O'Dell testified that he and his partner were sent to patrol the 6th District in Orleans Parish. O'Dell, a seven year officer, described some signs that officers are trained to look for regarding firearms:

> First of all, a bulge near the waistband area, any unnatural movements with the arms, either shielding an area or walking with one arm swinging, one arm still. Also, subconscious, or conscious leaning of the body at the sight of police. A subject, like, trying to avoid an officer seeing a particular area of his body.

On his patrol, Officer O'Dell said he noticed a group of three males walking on Jackson Avenue, with one of the three males holding his waistband and all three of them "very interested in the police vehicle," to see where it was going. Based on these mannerisms that O'Dell was trained to observe, he believed that there was a reasonable suspicion to stop and investigate the group further. Once the officers pulled over near the group, O'Dell's partner questioned them and two of the individuals approached the car while the third individual, J.G. stayed away. J.G. also stood with his back turned to the car. After coaxing from the officer, J.G. turned and walked towards the car. As J.G. turned, O'Dell's partner noticed a bulge in J.G.'s hoodie pocket and that his hoodie was sagging. The officer stated that these are clear signs that someone is hiding a firearm.

J.G. draws on case law from the 1990's in his argument. He cites *State In the Interest of J.H.*, 11-324 (La. App. 5 Cir. 12/28/11), 83 So.3d 1100,[6] which used

---

[5] *State v. Boyer*, 07-0476, pp. 17-18 (La.10/16/07), 967 So.2d 458, 469-70.
[6] The case involves an officer observing a juvenile with his hand under his shirt in his waistband. When the officer approached in his vehicle, the juvenile started walking away, and the officers detained and frisked him. The fifth circuit overturned the trial court.

reasoning from the Fourth Circuit. The Fifth Circuit cited the Fourth Circuit, writing that:

> This court reversed the trial court's ruling, holding that defendant's flight by quickly walking away and putting his hands in his waistband immediately after seeing the police officers did not provide reasonable cause for an investigatory stop. The court also noted that the only action of the defendant prior to the stop was that the defendant saw them, immediately turned, and quickly walked away. Id., 621 So.2d at 201.

The facts of this case distinguish itself from the decision in *J.H.* When asked about the area that O'Dell was patrolling, he stated, "This area is within a zone that is known for violent crime, shootings, [and] homicides, which is why we were instructed to patrol in that particular area." The information gathered from crime statistics in this particular area, combined with the actions of one of the individuals holding his waistband and the group's frequent checking of the movements of the police car gave the officers reasonable suspicion to make an investigatory stop.

We find no error in the juvenile court's denial of J.G.'s motion to suppress. Therefore, we affirm both the denial of the motion to suppress and J.G's adjudication.

**AFFIRMED**