STATE OF LOUISIANA                          NO. 25-K-365

VERSUS                                      FIFTH CIRCUIT

LARRY ST. AMANT, JR.                        COURT OF APPEAL

                                            STATE OF LOUISIANA

September 24, 2025

Linda Tran
First Deputy Clerk

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Tran
First Deputy, Clerk of Court

**IN RE** LARRY ST. AMANT, JR.

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE DONALD A. ROWAN, JR., DIVISION "L", NUMBER 24-2266

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Scott U. Schlegel

**WRIT DENIED**

Relator, Larry St. Amant, Jr., seeks supervisory review of the trial court's July 9, 2025 ruling denying his motion to suppress evidence. For the following reasons, the writ is denied.

On April 24, 2024, the Jefferson Parish District Attorney filed a bill of information charging relator with possession with intent to distribute cocaine weighing 28 grams or greater in violation of La. R.S. 40:967(A).[1] Relator filed a motion to suppress evidence on October 10, 2024. Following a hearing on July 9, 2025, the trial court denied the motion to suppress.

At the July 9, 2025 suppression hearing, Detective Jeremy Budo of the Jefferson Parish Sheriff's Office testified that in early 2025, he received

---

[1] Larry J. St. Amant, Sr. was charged in count two in the same bill with possession of cocaine weighing less than 2 grams in violation of La. R.S. 40:967(C). The companion writ application of St. Amant, Sr. is filed in Case Number 25-K-371.

25-K-365

information from a reliable confidential informant that St. Amant, Jr. was trafficking cocaine in Jefferson Parish. The informant provided a description and phone number for St. Amant, Jr., and indicated that he frequently hid cocaine under his testicles. Surveillance was conducted, and a controlled buy was arranged, confirming the informant's information. Sometime thereafter, on March 5, 2024, detectives observed St. Amant, Jr. arrive at his residence on Fig Street in a red Lexus SUV, exit the front passenger seat, go inside, and return a short time later to the front passenger seat of that vehicle, after which they followed the vehicle and stopped it for a traffic violation. Relator does not challenge the stop.

Instead, relator argues that his Fourth Amendment rights were violated when he was removed from the vehicle and strip searched on the side of the road without probable cause. Specifically, relator argues that the search exceeded the scope of a *Terry* frisk, was not conducted incident to an arrest, and was based on outdated information from a confidential informant, rather than any immediate evidence of criminal activity.

The State, however, argues that during the stop, officers smelled marijuana and were informed by the driver, Crystal Royal, that illegal narcotics were present in the vehicle. A K-9 unit was also deployed and discovered marijuana in the vehicle. Further, the State argues that during the initial search, they found vegetative matter in St. Amant, Jr.'s pocket before conducting an additional search that led to the discovery of cocaine under his testicles. Thus, the State argues that the search of the defendant on the side of the road was lawful.

The trial court is vested with great discretion when ruling on a motion to suppress. *State v. McCarthy,* 21-153 (La. 4/20/21), 313 So.3d 1234, 1236. The trial court's findings of fact on a motion to suppress are reviewed under a clearly erroneous standard. *Id.*

2

Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. *State v. Roche*, 05-237 (La. App. 5 Cir. 4/25/06), 928 So.2d 761, 765, *writ denied*, 06-1566 (La. 1/8/07), 948 So.2d 120. Warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. *Id.*

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement. A police officer may stop an individual if he reasonably suspects that criminal activity may be afoot. *Id.* "Once an officer conducts an investigatory stop of a person pursuant to La. C.Cr.P. art. 215.1(B), the officer may conduct a limited pat-down frisk for weapons if he reasonably believes he is in danger or that the suspect is armed." *State v. Gilbert*, 23-121 (La. App. 5 Cir. 11/8/23), 377 So.3d 378, 387, *writ denied*, 23-1640 (La. 5/29/24), 385 So.3d 704. It is not necessary that an officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that the officer establishes a "substantial possibility" of "danger." *State v. Gresham*, 97-1158 (La. App. 5 Cir. 4/15/98), 712 So.2d 946, 952, *writ denied*, 98-2259 (La. 1/15/99), 736 So.2d 200.

In a hearing on a motion to suppress evidence seized without a warrant, the State bears the burden of proving that an exception to the warrant requirement applies. *State v. Lane*, 09-179 (La. App. 5 Cir. 9/29/09), 24 So.3d 920, 923, *writ denied*, 09-2360 (La. 5/21/10), 36 So.3d 226 (citing La. C.Cr.P. art. 703(D)).

But here, the State has failed to carry its burden. The State called only one witness, Detective Budo, who did not arrive on the scene until approximately 30 minutes after the traffic stop. As a result, this Court is left with what can be observed in the videos to fill in some critical gaps in his testimony. And as noted

3

by both the State and the defense, establishing a proper timeline is essential for our review.

After viewing the three videos, this Court finds that relator was removed from the vehicle before any other occupant. While on the passenger side of the vehicle, the detective conducted a brief pat down of the relator before searching his pockets and removing what appears to be a cell phone. Relator was then handcuffed and advised of his *Miranda* rights. The detective next relocated with relator to a unit behind the subject vehicle to conduct a second search. It is at this point that a detective can be heard announcing that he had found a little marijuana after searching one of relator's pockets. The videos show the detective then took relator to the side of the unit behind the unit's door so that they were not visible from the street to conduct a more thorough search. The strip search itself was not shown on the bodycam footage.

The State failed to provide any evidence, however, that the driver had yet admitted to the presence of narcotics or that the K-9 sweep had occurred prior to the searches of relator. In fact, one of the detectives on the video can be heard asking if there was anything else in the car and saying that they were going to deploy the K-9 while relator is being searched for the second time. Additionally, the detective who conducted the pat down did not testify. As a result, we cannot determine if the detective felt something in St. Amant, Jr.'s pocket that he immediately recognized, based upon his experience, as a weapon or illegal narcotics. And there was no testimony by Detective Budo on this point. Finally, the confidential informant's tip was not related to this date or vehicle in question. Thus, we find that the searches of St. Amant, Jr. exceeded the scope of *Terry*.

Nevertheless, suppression is not required in this case in accordance with the inevitable discovery doctrine. The United States Supreme Court has explained that "[e]xclusion of physical evidence that would inevitably have been discovered adds

4

nothing to either the integrity or fairness of a criminal trial." *Nix v. Williams*, 467 U.S. 431, 446, 104 S. Ct. 2501, 2510, 81 L. Ed. 2d 377 (1984). In the case of *State v. Lee*, 05-2098 (La. 1/16/08), 976 So.2d 109, 127, the Louisiana Supreme Court summarized the inevitable discovery doctrine as follows:

> One of the theories courts use in addressing "fruit of the poisonous tree" issues is the inevitable discovery rule. The inevitable discovery doctrine "is in reality an extrapolation from the independent source doctrine: Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Murray v. United States,* 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). A functional similarity exists between the independent source and inevitable discovery doctrines because both seek to avoid excluding evidence the police "would have obtained ... if no misconduct had taken place." *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State therefore bears the burden of proving by a preponderance of the evidence that "the information ultimately or inevitably would have been discovered by lawful means...." *Id.; State v. Vigne,* 01–2940 (La.6/21/02), 820 So.2d 533, 539. Application of the inevitable discovery doctrine thus "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment...." *Nix v. Williams,* 467 U.S. at 444, 104 S.Ct. at 2509 n. 5; *State v. Vigne,* 820 So.2d at 539.
>
> Integral to the proper application of the inevitable discovery doctrine is a finding that law enforcement *would* have inevitably secured the evidence by lawful means, not simply that they *could* have.

Here, the detectives smelled marijuana and were told by the driver of the vehicle that there were drugs in the vehicle. There is no reason to question the trial court's determination that the detectives smelled marijuana or that the driver admitted to marijuana being in the vehicle, as the trial court is in the best position to weigh the credibility of the witness. Further, the detectives eventually deployed a K-9 unit, which discovered drugs in the vehicle, supporting Detective Budo's testimony. Ultimately, five separate bags of marijuana were found in a jar on the floorboard of the backseat, and a firearm was recovered in the driver's side door. Based upon the totality of the circumstances, this would have resulted in the arrest of relator. And a search incident to that arrest, either at the scene or prior to booking at the jail, would have inevitably resulted in the discovery of the cocaine on his person.

5

Accordingly, we cannot say that the trial court erred in denying the motion to suppress. The writ is denied.

Gretna, Louisiana, this 24th day of September, 2025.

**SUS**
**FHW**
**JGG**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **09/24/2025** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**25-K-365**

### E-NOTIFIED

24th Judicial District Court (Clerk)
Honorable Donald A. Rowan, Jr. (DISTRICT JUDGE)
Roger W. Jordan, Jr. (Relator)          Thomas J. Butler (Respondent)
Darren A. Allemand (Respondent)

### MAILED

Taylor Somerville (Respondent)
Honorable Paul D. Connick, Jr.
(Respondent)
District Attorney
Twenty-Fourth Judicial District
200 Derbigny Street
Gretna, LA 70053